# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

## Case No. CIV-17-870-SLP

EVANSTON INSURANCE COMPANY,
an Illinois corporation, as successor by merger
with Essex Insurance Company,

Plaintiff,

vs.

A&S ROOFING, LLC, an Oklahoma Limited Liability Company;
OKLAHOMA PROPERTY INVESTORS, LLC,
an Oklahoma Limited Liability Company;
OKLAHOMA PROPERTY INVESTORS II, LLC,
an Oklahoma Limited Liability Company;
OKLAHOMA PROPERTY INVESTORS III, LLC
an Oklahoma Limited Liability Company;
JASON P. LAKIN, an Individual;

Defendants.

## EVANSTON INSURANCE COMPANY'S BRIEF IN
## SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## The Honorable Scott L. Palk

ROGER N. BUTLER, JR, OBA #13668
SECREST HILL BUTLER & SECREST
7134 South Yale, Suite 900
Tulsa, Oklahoma  74136-6360
(918) 494-5905 (Telephone)
(918) 494-2847 (Facsimile)
rbutler@secresthill.com
**ATTORNEY FOR PLAINTIFF
ESSEX INSURANCE COMPANY**

**Dated this 9th day of October, 2018.**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... iv

INTRODUCTION .............................................................................................. 1

STATEMENT OF UNCONTROVERTED FACTS ........................................................ 1

    The OPI Lawsuit ...................................................................................... 2

    Provisions of Essex Policy I and Essex Policy II ........................................ 5

    The Membrane Roofs and Method of Their Application ............................. 13

ARGUMENTS & AUTHORITIES ....................................................................... 14

    I.     Rules of Contract Interpretation ................................................. 14

    II.    Coverage Does Not Extend To A&S
           For The Damages OPI Is Seeking ................................................ 14

           A.    The Insuring Agreement in Essex Policy I and
                  Policy II Limits Coverage to Damages the Insured
                  Becomes "legally obligated to pay as damages. ........................... 15

           B.    The Insuring Agreement in the Essex Policies Limits
                  Coverage to Damages Caused by an "Accident." .......................... 17

    III.   MULTIPLE EXCLUSIONS IN THE ESSEX
           POLICIES ELIMINATE COVERAGE ....................................... 21

           A.    The Exclusion for Property Damage to
                  Restored, Repaired, or Replaced Property Eliminates Coverage..... 21

           B.    The "Your Product" Exclusion Eliminates Coverage ..................... 22

            C.    The "Your Work" Exclusion Eliminates Coverage ........................ 23

            D.    The "Impaired Property" Exclusion ................................................ 27

            E.    The Combination General Endorsement ......................................... 28

            F.    The Combination Construction Related Endorsement..................... 29

            G.    Membrane Roofs and Heat Application Roofing
                  Operations Are Excluded Twice ....................................................... 31

H.     Coverage, If Any, Is Limited To $50,000.00 for OPI's Claims ...... 40

IV.    BECAUSE THERE IS NO POSSIBILITY OF COVERAGE, EVANSTON HAS NO DUTY TO DEFEND AS A MATTER OF LAW ...................... 41

CONCLUSION .............................................................................................................. 42

# TABLE OF AUTHORITIES

## Cases

*American States Ins. Co. v. Mathis,*
974 S.W.2d 647 (Mo.Ct.App. 1998) .......................................................... 18–20

*Atlantic Casualty Insurance Company v. Sealtite Roofing & Construction Company,*
73 F. Supp. 3d 953 (N.D. Ill. 2014) .......................................................... 35–37

*B Hall Contracting Inc. v. Evanston Insurance Company,*
273 Fed. Appx. 310 (5th Cir. 2008) .......................................................... 32–34

*Dodson v. St. Paul Ins. Co.,*
1991 OK 24, 812 P.2d 372, 377 (Okla. 1991).......................... 14–15, 22–23, 25–26, 28–29

*Encompass Insurance Company v. Gammon Roofing, LLC,*
996 So.2d 16 (La.App.4th Cir. 2008) .......................................................... 37–39

*Essex Ins. Co. v. Willco Enterprises, LLC,*
2012 WL 3061453 (July 26, 2012) .......................................................... 31

*Essex Insurance Company v. Y&J Construction, Inc.,*
2016 WL 8254921 (E.D. Vir. December 30, 2016) .......................................................... 39–40

*First Bank v. Fidelity and Deposit Ins.,*
928 P.2d 298, 303 (Okla. 1996) .......................................................... 41–42

*Greystone Const. Inc. v. National Fire & Marine Ins. Co.,*
661 F.3d 1272, 1284 (10th Cir. 2011) .......................................................... 18

*Hartford Acc. & Indem. v. Pacific Mut. Life. Ins.,*
861 F.2d 250, 253 (10th Cir. 1988) .......................................................... 19, 23

*Houston General v. AM. Fence Co., Inc.,*
115 F.3d 805, 806 (10th Circ. 1997) .......................................................... 14

*Jaworsky v. Frolich,*
1992 OK 157, 850 P.2d 1052, 1054 .......................................................... 16

*Neale Construction Co. v. United States Fidelity &Guaranty Co.,*
199 F.2d 591 (10th Cir. 1953) .......................................................... 20

*Phillips v. Estate of Greenfield,*
859 P.2d 1101, 1005 (Okla.Ct. App. 1993) ........................................................ 16

*Redcorn v. State Farm Fire &Cas.,*
Co., 55 P.3d 1107,1019 (Okla. 2002) ................................................................ 14

*Stanford Ranch, Inc. v. Maryland Cas. Co.,*
89 F.3d 618, 627 (9th Cir. 1996) .................................................................. 15, 21

*United States Fidelity & Guaranty Co. v. Briscoe,*
239 P.2d 754 (Okla. 1952) ........................................................................... 19–20

*VBF, Inc. v. Chubb Group of Insurance Companies,*
263 F.3d 1226, 1231 (10th Cir. 2001) ................................. 15–16, 22–23, 29, 42

*Waggoner v. Town & Country Mobile Homes, Inc.,*
1990 OK 139, 808 P.2d 649 ............................................................................... 16

**EVANSTON INSURANCE COMPANY'S BRIEF IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT [Doc. 44]**

## INTRODUCTION

Evanston Insurance Company, as successor by merger with Essex Insurance Company (hereinafter "Evanston") moves for summary judgment in this declaratory judgment action, filed pursuant to Title 28 U.S.C. §§1332 and 2201, in regard to two commercial general liability ("CGL") insurance policies issued to the defendant, A & S Roofing, LLC (hereinafter "A&S"), as to a lawsuit filed against A&S and Jason P. Lakin (hereinafter "Lakin"), in Oklahoma County, Oklahoma (hereinafter the "Lawsuit"), by the defendants, Oklahoma Property Investors, LLC, Oklahoma Property Investors II, LLC and Oklahoma Property Investors, III, LLC (hereinafter, collectively "OPI").

Evanston moves for summary judgment and requests this court to enter judgment in its favor and against the defendants, A&S, OPI and Lakin, holding that the CGL policies issued by Essex Insurance Company (hereinafter "Essex") to A&S do not provide coverage for the Lawsuit; that Evanston has no duty to indemnify A&S and Lakin in regard to the Lawsuit; and that Evanston has no duty to defend A&S and Lakin in regard to the Lawsuit.

## STATEMENT OF UNCONTROVERTED FACTS

FACT 1.     Evanston is a corporation incorporated under the laws of the State of Illinois, with its principal place of business in Illinois.[1] [Amended Complaint for Declaratory Judgment, Doc. 3].

---

[1] In June 2016, Essex was merged into Evanston, at which time Evanston became the successor by merger with Essex.

1

FACT 2.       A&S is a limited liability company organized under the laws of the State of Oklahoma, with its principal place of business in Oklahoma City, Oklahoma. [Doc. 3].

FACT 3.       OPI are limited liability companies organized under the laws of the State of Oklahoma, with their principal place of business in Oklahoma City, Oklahoma. [Doc. 3].

FACT 4.       Lakin is a citizen of the State of Oklahoma. [Doc. 3].

FACT 5.       Evanston seeks a declaration of its rights and obligations under Essex Policy No. 3DE2004, issued to A&S, which has a policy period of September 16, 2010 to September 16, 2011. (hereinafter "Essex Policy I"). [Ex. 1].

FACT 6.       Evanston seeks a declaration of its rights and obligations under Essex Policy No. 3DE2016 issued to A&S which has a policy period of September 16, 2011 to September 16, 2012 (hereinafter "Essex Policy II"). [Ex. 2].

## The OPI Lawsuit

FACT 7.       OPI filed a Lawsuit against A&S and Lakin in regard to the application of three membrane roofing systems in 2010 through a subcontractor, Eagle Contracting, LLC (hereinafter "Eagle"), on buildings owned by OPI located at 3700 North Classen Boulevard, 3800 North Classen Boulevard, and 2915 North Classen Boulevard in Oklahoma City, Oklahoma. [Petition, Case No. CJ-2017-4548, Oklahoma County, Oklahoma, Exhibit 3].

FACT 8.       The OPI Lawsuit arises out of the application of membrane roofing systems by A&S, through Eagle, on three buildings located at 3700 North Classen

Boulevard, 3800 North Classen Boulevard and 2915 North Classen Boulevard, all in Oklahoma City, Oklahoma. [Exhibit 3].

FACT 9.    The application of the membrane roofing system on the building located at 3700 North Classen Boulevard was substantially completed on August 1, 2010. [Warranty, Exhibit 4].

FACT 10.    Upon information and belief, the application of the membrane roofing system on the building located at 3800 North Classen Boulevard was substantially completed on August 5, 2010. [Warranty, Exhibit 5].

FACT 11.    The application of the membrane roofing system on the building located at 2915 North Classen Boulevard was substantially completed on December 5, 2010. [Warranty, Exhibit 6].

FACT 12.    During its investigation of OPI's claim, Evanston was advised by A&S that the roofing on all three buildings consisted of putting down of a TPO roof system (Thermal Plastic Polyolefin) membrane. [Doc. 3, ¶26].

FACT 13.    The Lawsuit filed by OPI in Oklahoma County, Oklahoma asserts the following allegations against A&S and Lakin:

　　1. Plaintiff retained the services of Defendants for the purpose of replacing the roofs of several of its Oklahoma City properties, namely: 2915 N. Classen Blvd.; 3700 N. Classen Blvd., and 3800 N. Classen Blvd.

　　2. Defendants performed the re-roofing of Plaintiff's 3800 N. Classen Blvd. property on or about August 1, 2010.

　　3. Defendants performed the re-roofing of Plaintiff's 3700 N. Classen Blvd. property on or about August 5, 2010.

　　4. Defendants performed the re-roofing of Plaintiff's 2915 N. Classen Blvd. property on or about December 15, 2010.

5.  Defendants issued written warranties to Plaintiff for the re-roofing of each of the aforementioned properties, which each said warranty provided for a full 15 years warranty from the above-mentioned dates of August 1, 2010, August 5, 2010, and December 15, 2010.

6.  Defendants have breached each warranty by performing the work in a poor craftsmanship like manner resulting in failures to each of the aforementioned properties' roofs.

7.  Plaintiff has afforded Defendants several opportunities to repair each roof's failures, all of which have not corrected the installation's poor craftsmanship.

8.  Plaintiff has and continues to incur expenses in repairing the poor craftsmanship performed by Defendants for which Defendants are liable.

9.  Plaintiff has incurred additional expenses and losses due to Defendants' breach of the warranties for which Defendants are liable.

10. Defendants' breach has and continues to cause the Plaintiff to suffer damages, including but not limited to: damages to its properties, damages to the property of its tenants and costs of repairs to its properties.

11. Defendant, Jason P. Lakin, at all relevant and pertinent times herein acted as an agent of and for Defendant, A&S Roofing, and is equally and concurrently liable for the damages suffered by Plaintiff for the failures of the re-roofing and of the aforementioned properties by Defendant, A&S Roofing due to the installation's poor craftsmanship.

12. There is no alternative other than the complete re-roofing of each of the aforementioned properties as all previous measures to repair Defendants' poor craftsmanship have failed to rectify the defects.

13. Plaintiff's damages for Defendant's poor craftsmanship on its property located at 2915 N. Classen Blvd, is in excess of $55,900.00.

14. Plaintiff's damages for Defendant's poor craftsmanship on its property located at 3700 N. Classen Blvd, is in excess of $89,900.00.

15. Plaintiff's damages for Defendant's poor craftsmanship on its property located at 2915 N. Classen Blvd, is in excess of $89,900.00.

16. Plaintiff continues to expend funds to prevent damage to its aforementioned properties for which Defendants are liable.

WHEREFORE premises considered Plaintiff prays for judgment of this Court against Defendants and each of them for money damages, in an amount in excess of $235,500.00 plus interest, costs and attorney fees as allowed by law.

[Exhibit 3].

**<u>Provisions of Essex Policy I And Essex Policy II</u>**

FACT 14.    Essex issued Essex Policy I to A&S, with a policy period extending from September 16, 2010 to September 16, 2011. [Exhibit 1].

FACT 15.    Essex issued Essex Policy II to A&S, with a policy period extending from September 16, 2011 to September 16, 2012. [Exhibit 2].

FACT 16.    Essex Policy I and Essex Policy II both contain the following insuring agreement:

SECTION I – COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  Insuring Agreement

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverage A and B.

b.  This insurance applies to "bodily injury" and "property damage" only if:

> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> (2) The "bodily injury" or "property damage" occurs during the policy period;
>
> …

[Exhibits 1 and 2, Form CG 00 01 12 07].

FACT 17.    Essex Policy I and Essex Policy II define the following terms contained in the insuring agreement as follows:

> SECTION V – DEFINITIONS
>
> …
>
> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>
> …
>
> 17. "Property damage" means:
>
>> (a) Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>>
>> (b)      Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
>
> …

[Exhibits 1 and 2, Form CG 00 01 12 07]. [2]

FACT 18.    Essex Policy I and Essex Policy II contain the following exclusions:

> 2.  Exclusions
>
>    This insurance does not apply to:
>
>    …
>
>       j.  Damage To Property
>          "Property damage" to:
>
>       …

---

[2] Essex Policy I and Essex Policy II only apply to "property damage" caused by an "occurrence" which takes place during the policy period; to the extent that any property damage alleged in the Lawsuit took place outside of the respective policy periods, there is no occurrence and, therefore, no coverage under either policy.

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

…

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".[3]

k.  Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

l.  Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.[4]

m.  Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work", or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

[Exhibits 1 and 2, Form CG 00 01 12 07].

---

[3] The last paragraph of Exclusion j. is deleted pursuant to the Combination Construction Related Endorsement contained in Essex Policy I and Essex Policy II. (Facts 20 and 21)

[4] The last paragraph of Exclusion l. is deleted pursuant to the Combination Construction Related Endorsement contained in Essex Policy I and Essex Policy II. (Facts 20 and 21)

FACT 19.    Essex Policy I and Essex Policy II define the following terms contained in Exclusions 2.j(6), k., l. and m. as follows:

SECTION V – DEFINITIONS

…

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b. You have failed to fulfill the terms of a contract or agreement;

If such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

…

16. "Products-completed operations hazard":

    a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        (1) Products that are still in your physical possession; or

        (2) Work that has not yet been completed or abandoned.

…

21. "Your product";

    a. Means:

        (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed by:

           (a) You;

           (b) Others trading under your name; or

           (c) A person or organization whose business or assets you have acquired; and

8

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

   c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work";

   a. Means

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

   b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2) The providing of or failure to provide warnings or instructions.

[Exhibits 1 and 2, Form CG 00 01 12 07].

    FACT 20.   Essex Policy I contains the following endorsement which became effective on September 16, 2010:

### COMBINATION CONSTRUCTION RELATED ENDORSEMENT

I. The coverage under this policy does not apply to "bodily injury," "property damage," "personal and advertising injury," or any injury, loss or damage arising out of, caused or contributed by inadequate, improper, faulty or defective construction:

1. which first occurred, began to occur, or is alleged to have occurred prior to, or is alleged to be in the process or occurring to any degree, as of the inception date of this policy; and/or

9

    2.  causing incremental, continuous or progressive damage arising from an occurrence which first occurred, began to occur or is alleged to have occurred prior to the inception date of this policy; or

…

II. Under the Commercial General Liability Coverage Form Section I - Coverages, 2. Exclusions, is amended to delete the last paragraph from the following in their entirety:

    1.  j. Damage to Property

    2.  l. Damage to Your Work

III. This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury", or any injury, loss or damages, including consequential injury, loss or damage, arising directly or indirectly out of, caused by or contributed to, or resulting from:

…

    3.  any operations involving any hot tar, wand, open flame, torch or heated applications of roofing, or membrane roofing; and/or your failure to determine weather conditions from local weather bureau or station in advance of any roofing job, and having any 'open roof' to the elements, including but not limited to wind, hail, snow, rain, ice or any combination thereof. Open roof as used here shall include any roof or section of roof where shingles, tar, felt paper, and any other protective covering have been removed, thereby leaving exposed any supporting structure, decking, building interior or contents of same to the elements; any 'open roof' must be securely covered in advance of any precipitation, and in advance of your leaving the job for any period of time.[5]

…

V. If subcontractors are used, it is a condition of coverage that "you" require, secure, and maintain certificates of insurance that confirm the subcontractors carry at a minimum Commercial General Liability coverage with limits at least equal to the limits of this policy and name you as an additional insured on their policy.

Failure to comply with this condition does not void your coverage, however, limits of liability hereunder will be reduced and apply as a sublimit of liability, being a Combined Single Limit, $50,000 each

---

[5] Section III.3 of this endorsement specifically excludes and eliminates coverage for any property damage, injury, loss or damages arising directly or indirectly out of, caused by or contributed to or resulting from any operations involving "heated applications of roofing" or "membrane roofing."

occurrence and in the Aggregate, including loss adjustment expenses and defense. The sublimit would be the most payable for all damages arising out of any one occurrence, and the most payable for all claims under this policy, including investigation and defense. If the sublimit is tendered or exhausted, we would not defend or continue to defend in any suit.[6]

…

[Exhibit 1, Form M/E-043 (03/09)].

FACT 21.    Essex Policy II contains the following endorsement which became

effective on September 16, 2011:

Combination Construction Related Endorsement

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following are added to Section I, item 2, Exclusions:

   1. The coverage under this policy does not apply to "bodily injury," "property damage," or "personal and advertising injury" or any injury, loss or damage:

      (a) Which first occurred, began to occur, or is alleged to have occurred prior to, or is alleged to be in the process of occurring to any degree, as of the inception date of this policy;

      (b) Which is caused by or alleged to have been caused by incremental, continuous or progressive damage arising from an "occurrence" which first occurred, began to occur, or is alleged to have occurred prior to the inception date of this policy;

   …

C. The last paragraph is deleted in its entirety from the following exclusions in Section I:

   1. Exclusion j., Damage to Property

   2. Exclusion l., Damage to "Your Work."

[Exhibit 2, Form ME 043 04 10].

---

[6]While failure to comply with Section V does not void coverage, it reduces limits available under Essex Policy I to a "combined single limit" of $50,000.00.

FACT 22.    Essex Policy I and Essex Policy II both contain the following endorsement, which became effective on September 16, 2010 and September 16, 2011, respectively:

ROOFING ENDORSEMENT

The coverage under this policy does not apply to "bodily injury," "property damage," "personal injury," "advertising injury," or any injury, loss or damage arising out of:

…

3.  Any operations involving any hot tar, wand, open flame, torch or heat applications, or membrane roofing;[7]

…

[Exhibits 1 and 2, Form M/E-191 (04/99)].

FACT 23.    Both Essex Policy I and Essex Policy II contain different versions of following endorsements which state in relevant part:

COMBINATION GENERAL ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1.  This insurance does not apply to claims arising out of breach of contract, whether written or oral, express or implied, implied-in-law, or implied–in-fact contract.[8]

…

[Exhibit 1, Form ME 001 04 10].

COMBINATION GENERAL ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

---

[7] This endorsement excludes and eliminates coverage for property damage, injury, loss or damage arising out of any operations involving "heat applications" or "membrane roofing."

[8] This endorsement excludes and eliminates coverage for breach of contract claims.

1. This insurance does not apply to claims arising out of breach of contract, whether written or oral, express or implied, implied-in-law, or implied – in fact contract.[8]

…

[Exhibit 2, Form MEGL 0001 05 10].

### The Membrane Roofs and Method of Their Application

FACT 24.    Michael J. Berryman is president and chief executive officer of Berryman Enterprises; Mr. Berryman is a general contractor and consultant in Oklahoma City, Oklahoma. [Affidavit of Michael J. Berryman, Exhibit 7].

FACT 25.    On April 8, 2018, Mr. Berryman participated in an inspection of the roofs on the three OPI buildings. [Ex. 7].

FACT 26.    In advance of the inspection, Mr. Berryman reviewed the "Affidavit of Victor Maya," a member of Eagle, A&S's subcontractor. [Exhibit 7; Affidavit of Victor Maya, Exhibit 8].

FACT 27.    In 2010, Eagle entered into a subcontract agreement with A&S to replace the roofs on all three OPI buildings. [Exhibits 7 and 8].

FACT 28.    Based upon Mr. Berryman's inspection of the roofs, Mr. Maya's affidavit, as well as his review of product literature in regard to the roofing systems referenced in Mr. Maya's affidavit, it is Mr. Berryman's clear opinion that all three roofing systems installed by Eagle in 2010 on the OPI buildings were membrane roofing systems. [Exhibits 7 and 8].

FACT 29.    Further, Mr. Berryman is of the opinion that all of the membrane roofing systems installed by Eagle in 2010 on the OPI buildings pursuant to the

13

subcontract with A&S required "heated or heat application and/or heat welding in order to install them." [Exhibit 7].

## ARGUMENTS AND AUTHORITIES

### I.   RULES OF CONTRACT INTERPRETATION

The Tenth Circuit has stated:   "The interpretation of an insurance contract is governed by state law and, sitting in diversity, we look to the law of the forum state." *Houston General v. AM. Fence Co., Inc.*, 115 F.3d 805, 806 (10th Circ. 1997) (applying Oklahoma law). "Parties to a contract for insurance are free to choose the risks to be covered by the policy." *Redcorn v. State Farm Fire &Cas., Co*., 55 P.3d 1107,1019 (Okla. 2002). "Once agreed upon, the parties are bound by the terms of the contract; and courts will not rewrite those terms." *Id*. An insurance policy is a contract, and a contract is to be construed as a whole, "and as amplified, extended, or modified by any rider, endorsement, or application attached to and made a part of the policy." Title 36 O.S. §3621. "The policy exclusions are read seriatim; each exclusion eliminates coverage and operates independently against the general declaration of insurance and all prior exclusions by specifying other occurrences not covered by the policy." *Dodson v. St. Paul Ins. Co.,* 1991 OK 24, 812 P.2d 372, 377 (Okla. 1991).

### II.   COVERAGE DOES NOT EXTEND TO A&S FOR THE DAMAGES OPI IS SEEKING

This court must first determine if the insuring agreement in Essex Policy I and Policy II extends coverage to OPI's claims. If there is coverage, the court must then determine if any policy exclusions apply. If an exclusion applies, coverage is eliminated.

These principles of insurance contract interpretation were succinctly stated by the court in

*Stanford Ranch, Inc. v. Maryland Cas. Co*., 89 F.3d 618 (9th Cir. 1996), as follows:

> In interpreting an insurance contract, this court must first look to the insuring agreement and determine whether coverage exists. If coverage exists, then this court must look to the contract exclusions to see if coverage is otherwise excluded. If coverage does not exist under the insuring agreement, the inquiry is at an end. There is no need to look at exclusions because they cannot expand the basic coverage granted in the insuring agreement.

*Id.* at 627; see also, *Dodson*, 812 P.2d at 377.

**A.**     **The Insuring Agreement in Essex Policy I and Policy II Limits Coverage to Damages the Insured Becomes "legally obligated to pay as damages."**

The insuring agreement in the policies issued by Essex provides in relevant part as

follows:

> 1. Insuring Agreement
>
> a. We will pay those sums that the insured becomes *legally obligated to pay* as damages because of "bodily injury" or "*property damage*" *to which this insurance applies*.

(Fact 16)(emphasis added).

The phrase "legally obligated to pay" has been construed by the courts as referring to claims arising from tort, and not contract. *VBF, Inc. v. Chubb Group of Insurance Companies,* 263 F.3d 1226, 1231 (10th Cir. 2001)(applying Oklahoma law).  In *VBF*, the insuring agreement in the CGL policy at issue contained the identical language set forth in the Essex policies, i.e., "legally obligated to pay." The *VBF* court noted that the phrase "legally obligated to pay refer[s] only to tort claims and not contract claims." *Id.* at 1231. Because the insured in *VBF* was sued for damages arising from contract and not tort, the court recognized that the insuring agreement did not extend coverage to the claims. *Id.*

15

In the present case, the claims made by OPI against A&S and Lakin arise from breach of a warranty and not tort. (Fact 13). Under Oklahoma law, warranty claims flow from contract. *Jaworsky v. Frolich*, 1992 OK 157, 850 P.2d 1052, 1054; *Waggoner v. Town & Country Mobile Homes, Inc.*, 1990 OK 139, 808 P.2d 649.  Specifically, in their petition, OPI alleges that OPI retained the services of A&S and Lakin to replace the roofs on three of its Oklahoma City properties. (Fact 13).  Further, OPI alleges that A&S and Lakin issued written warranties which A&S breached. (Fact 13). As recognized in *VBF*, the phrase "legally obligated to pay" refers to claims arising from tort and not breach of contract or warranty. Since the claims of OPI arise from breach of a written warranty and not tort, the Essex policies do not extend coverage to those claims.

Furthermore, any assertions of "negligence" by OPI in the installation of the roofs are not sufficient to change the fact that the claims arise from contract/breach of warranty and not tort. The plaintiff in *VBF* asserted a claim of negligence. *Id.* at 1231. The *VBF* court noted that the negligence claim did not "change the underlying nature" of the lawsuit, which was breach of contract. *Id.* at 1231; see also, *Phillips v. Estate of Greenfield*, 859 P.2d 1101, 1005 (Okla.Ct. App. 1993)(noting that "coverage does not turn on the legal theory under which liability is asserted, but on the cause of the injury"). Here, the breach of warranty claims asserted by OPI confirms the contract nature of the claims.[9] Thus, since the claims asserted by OPI against A&S and Lakin arise from

---

[9] In its answer, OPI reiterates that its claim against A&S and Lakin "is for a warranty…" (OPI Answer, Doc. 11, Affirmative Defense 3).

16

contract, and not tort, coverage under the Essex policies does not extend to the warranty claims.

As well, the Essex policies specifically include "Warranties or representations made at the time with respect to the fitness, quality, durability, performance or use" of "your product" and "Warranties or representations made at any time with respect to the fitness, quality, durability performance or use" within the definitions of "your product" and of "your work." (Fact 19.  Thus, any policy exclusions eliminating coverage for "your product" or "your work" also encompass any warranties A&S and Lakin made regarding them. (See Infra, pp. 22–27).

**B.**     ***The Insuring Agreement in the Essex Policies Limits Coverage to Damages Caused by an "Accident."***

The insuring agreement in the Essex policies limits coverage to damages arising from an "accident." Specifically, the Essex policies provide it "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Fact 16, pg. 5). The insuring agreement further provides that "This insurance applies to 'bodily injury' and 'property damage' only if: (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence…'" (Fact 16, pg. 5). The policies define the term "occurrence" as follows: "'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Fact 17, pg. 6). Thus, the Essex policies apply only if the damages claimed by OPI were caused by an "accident."

17

The damages OPI seeks to recover from A&S and Lakin were not caused by an "accident" within the meaning of that term in the Essex policies. In their petition, OPI claims "poor craftsmanship like" work in the installation of the roofs on its buildings. (Fact 13, ¶6). Substandard work performed by a contractor does not constitute an "accident" within the meaning of that term in a CGL policy, which the Essex policies are, where the resulting damage is *not* to "nondefective property." *Greystone Const. Inc. v. National Fire & Marine Ins. Co.*, 661 F.3d 1272, 1284 (10th Cir. 2011). In *Greystone*, the Tenth Circuit analyzed the positions of all courts addressing whether CGL policies cover damage due to poor workmanship.  The court held:

> Accordingly, we hold that injuries flowing from improper or faulty workmanship constitute an occurrence so long as the resulting damage is to nondefective property, and is caused without expectation or foresight.

*Id.* at 1284.

Therefore, it follows that injuries flowing from improper or faulty workmanship do not constitute an occurrence if the resulting damage is to defective property, such as the roofs installed on the OPI buildings. This reasoning supports the rationale that CGL policies do not provide coverage for contract and breach of warranty claims.  A case on point is *American States Ins. Co. v. Mathis*, 974 S.W.2d 647 (Mo.Ct.App. 1998); though this is a Missouri case, the law applied is the same as in Oklahoma.  In *Mathis*, the insurance company filed a declaratory judgment action seeking a ruling it had no duty to indemnify its insured contractor for repair and replacement of improperly trenched and constructed duct banks, electrical conduit, cable, and wire. *Id.* at 648. Identical to the

Essex policies, the CGL policy in *Mathis* extended coverage to damages caused by an "occurrence," and defined the term "occurrence" as an "accident." *Id.*

The *Mathis* Court noted that Missouri law defined the term "accident" as "[a]n event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event." *Id.* at 650. The *Mathis* court held that the failure of the contractor to perform "cannot be described as an undesigned or unexpected event," and therefore there was no "accident." The court recognized that it is not the purpose of a CGL policy to guarantee the integrity of the work:

> It is not the function of the CGL policy to guarantee the technical competence and integrity of business management. The CGL policy does not serve as a performance bond, nor does it serve as a warranty of goods or services. It does not ordinarily contemplate coverage for losses which are normal, frequent or predictable consequences of the business operations. Nor does it contemplate ordinary business expenses, or injury and damage to others which results by intent or indifference.

*Mathis* at 649; see, *Hartford Acc. & Indem. v. Pacific Mut. Life. Ins.,* 861 F.2d 250, 253 (10th Cir. 1988) ("The policy [CGL policy] is not intended to serve as a performance bond or guaranty of goods or services").

The definition of the term "accident" applied by the court in *Mathis* is identical to the definition adopted by the Oklahoma Supreme Court. See *United States Fidelity & Guaranty Co. v. Briscoe*, 239 P.2d 754 (Okla. 1952). The *Briscoe* court defined the term "accident" as "[a]n event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event, chance, contingency." Id. at 757. As noted above, the *Mathis* court defined "accident" as "[a]n event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event." *Mathis*, 974

S.W.2d at 650. In *Briscoe,* the court held that if the insured performs a voluntary act, the natural, usual, and to-be-expected result is not an accident in any sense of the word, legal or colloquial. *Briscoe*, 239 P.2d at 757.

The Tenth Circuit has recognized that injuries flowing from improper or faulty workmanship does not constitute an occurrence under a CGL policy if the resulting damage is to defective property. In *Neale Construction Co. v. United States Fidelity &Guaranty Co*.,199 F.2d 591 (10th Cir. 1953), the plaintiff, a construction contractor, was sued for breach of a construction contract and negligence. The insured contractor brought suit against its insurer seeking a determination that the claims against it were covered by the CGL policy. The policy at issue in *Neale* extended coverage to property damage caused by an "accident." The court held that "the natural and ordinary consequences of a negligent act do not constitute an accident... though such results may not have been intended or anticipated." *Id.* at 593.

In the present case, the claims asserted by OPI are based entirely on "poor craftsmanship like" work, that being the alleged failure to properly install the roofs in a workmanlike manner. (Fact 13). Damages caused by such defects and substandard work are not damages caused by an "accident" within the meaning of that term in the Essex policies. Accordingly, the Essex policies do not extend coverage to the damages OPI seeks to recover.

### III.    MULTIPLE EXCLUSIONS IN THE ESSEX POLICIES ELIMINATE COVERAGE, IF ANY

As noted above, "if coverage does not exist under the insuring agreement, the inquiry is at an end." *Stanford Ranch, Inc*. 89 F.3d at 627. In other words, there is no need to even consider policy exclusions if the insuring agreement does not extend coverage for the claims. It is Evanston's position that the arguments advanced in Section II of this brief are dispositive of whether there is coverage for OPI's claims. Alternatively, even if this court finds that coverage extends to OPI's claims, such coverage is nevertheless eliminated by multiple policy exclusions contained in the Essex policies.

### A.    *The Exclusion for Property Damage to Restored, Repaired, or Replaced Property Eliminates Coverage.*

The Essex policies contain the following exclusion for property damage to that part of any property that must be restored, repaired, or replaced because of incorrectly performed work:

> 2. Exclusions
>
>  This insurance does not apply to:
>
> j. Damage To Property
>
> "Property damage" to:
>
> (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

(Fact 18, pp. 6–7). The last paragraph of Exclusion j. is deleted pursuant to the Combination Construction Related Endorsement contained in Essex Policy I and Essex Policy II. (Facts 20 and 21).

OPI seeks to recover from A&S and Lakin for repairs to correct the roofing work performed by A&S's subcontractor, Eagle, which is A&S's "work" pursuant to the policy definition of "your work." (Fact 13). OPI alleges that its damages resulted from "poor craftsmanship" in the installation of the roofs. (Fact 13). Exclusion 2.j(6) eliminates coverage for property damage to that part of "any" property that must be restored, repaired or replaced because of "incorrectly performed" work. This is exactly what OPI alleges against A&S and Lakin, and exactly the type of damages they seek to recover. Thus, any damages for restoring, repairing, or replacing the roofs on the three OPI buildings is eliminated per this exclusion.

**B.** *The "Your Product" Exclusion Eliminates Coverage.*

The Essex policies contain an exclusion for property damage arising out of the insured's "product," here that would be the roofs installed on the OPI buildings. Specifically, the policies contain the following "your product" exclusion:

> 2. Exclusions
> This insurance does not apply to:
> k. Damage To Your Product
> "Property damage" to "your product" arising out of or any part of it.

 (Fact 18, pg. 7).

This exclusion is similar to the "products" exclusion set forth as exclusion (m) to the St. Paul policy at issue in *Dodson, supra.* That exclusion provided that the St. Paul policy did not apply: "(m) to property damage to the Named Insured's products arising out of such products or any part of such products." *Dodson*, 812 P.2d at 374. The *Dodson*

court held that the products exclusion "eliminate[s] coverage for property damage caused by the lack of quality or performance of the insured's products...." *Id.* at 378.

As well, the *VBF* court reached a similar conclusion concerning the "your products" exclusion at issue in that case. The "your products" exclusion in *VBF* eliminated coverage for "property damage to or loss of use of:... b. your products caused by such products or any part of their parts." *VBF, Inc.*, 263 F.3d at 1233. The *VBF* court recognized that the exclusion is not limited to products manufactured by an insured, but includes products furnished by an insured in connection with work performed. *Id.* at 1234. The *VBF* court held that the "your product" exclusion applied, thus eliminating coverage. *Id.*

Likewise, the "your product" exclusion in the Essex policies eliminates coverage for property damage caused by any lack of quality or performance of the roofs installed on the OPI buildings.

**C.    *The "Your Work" Exclusion Eliminates Coverage.***

"Coverage under a CGLP [comprehensive general liability policy] is not intended to extend to ordinary 'business risks,' such as those relating 'to the repair or replacement of faulty work or products.'" *Hartford Accident & Indemnity Company v. Pacific Mutual Life Insurance Company*, 861 F.2d 250, 253 (10th Cir. 1988)(applying Oklahoma law) (quoting Tinker, Comprehensive General Liability Insurance - Perspective & Overview, 25 Fed'n Ins. Couns.Q... 217, 218-19 (1975)). "The policy is not intended to serve as a performance bond or a guaranty of goods or services." *Id*. "Its purpose is to protect the

insured from liability for damages to property other than his own work or property that is caused by the insured's defective work or product." *Id.*

Consistent with the foregoing purpose of CGL coverage, the Essex policies contain an exclusion for property damage arising out of the insured's work and products. Specifically, the Essex policies contain the following "your work" exclusion:

> This insurance does not apply to:
>
> 1. Damage To Your Work
>
> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

(Fact 18, pg. 7). The last paragraph of Exclusion l. is deleted pursuant to the Combination Construction Related Endorsement contained in Essex Policy I and Essex Policy II. (Facts 20 and 21).

The Essex policies define the term "your work" as follows: "(1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations." (Fact 19, pp. 9). This definition also includes warranties. (Fact 19, pp. 9).

The Essex policies define the "products-completed operations hazard" in pertinent part as follows: "a. Includes all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your work' or 'your product' except: (1) products that are still in your physical possession; or (2) work that has not yet been completed or abandoned." (Fact 19, pg. 8).

Based on the foregoing terms of the Essex policies, the following three elements must be satisfied for the "your work" exclusion to apply here: (1) the property damage

claimed must arise out of the work and/or products of A&S and Lakin; (2) the property damage must occur after the work has been completed by A&S and Lakin; and/or the products have left their possession; and (3) the damage must arise away from any premises owned or rented by A&S and Lakin.

The first element is satisfied because the alleged damage arises from the work and products of A&S and Lakin as performed by the subcontractor, Eagle. In the petition, OPI seeks to recover for property damage arising from such work and products. (Fact 13). Thus, the first element of the "your work" exclusion is satisfied.

The second element of the "your work" exclusion requires that the property damage occur after the work has been completed. OPI alleges the work was completed on all three buildings by December 15, 2010. (Fact 13). Thus, the second element of the "your work" exclusion is satisfied because the alleged damage occurred after the work was completed.

Finally, the third element of the "your work" exclusion is satisfied because the property damage occurred away from any premises owned or rented by A&S and Lakin. Any claimed property damage occurred at the buildings owned by OPI. (Fact 13). Thus, the facts satisfy the elements required for application of the "your work" exclusion, thus eliminating coverage for OPI's claims.

A similar case applying the "your work" exclusion is *Dodson*, *supra.* In *Dodson*, St. Paul issued a CGL policy to Dodson Construction Company. Dodson, a general contractor, constructed a school building for the Board of Education of Independent School District No. 1 in Sulphur, Oklahoma. Upon completion of the building, the school

district discovered the roof was poorly constructed, causing leaks and interior damage. Dodson forwarded a loss notice to St. Paul concerning the leaky roof. St. Paul denied coverage for the defective workmanship and materials used to construct the roof.

The school district filed suit against Dodson, and they agreed to submit the dispute to arbitration. The arbitration tribunal found in favor of the school board and against Dodson, awarding the school district the sum of $44,997.00, representing the cost to replace the roof, and $1,000.00 for interior damage caused by the leaky roof. St. Paul agreed to pay for the interior damage caused by the leaky roof, but denied coverage for the cost of replacing the roof. As a result, Dodson then filed suit against St. Paul for breach of contract and bad faith. *Id*. at 373. The district court held that the St. Paul policy provided coverage for the cost to replace the roof, and following a jury trial, the jury assessed actual and punitive damages against St. Paul.

On appeal, the Oklahoma Supreme Court reversed, holding that the St. Paul CGL policy did not provide coverage for the property damage caused by the faulty work performed by Dodson. The St. Paul policy contained an exclusion similar to the "your work" exclusion in the Essex policies. The St. Paul exclusion provided as follows: This insurance does not apply: "(n) to property damage to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith." *Id.* at 374. The Oklahoma Supreme Court held that the "your work" exclusion was clear and unambiguous, and that the exclusion eliminated coverage for property damage caused by the faulty work and product of Dodson. Specifically, the court held as follows:

> Regardless of the underlying cause of action against the insured, exclusions (m) and (n) eliminate coverage for property damage caused by the lack of quality or performance of the insured's products and for any repair or replacement of the faulty work performed by or on behalf of the insured. Exclusions (m) and (n) unquestionably exclude coverage for the business risk incurred by the insured.

*Id.* at. 378.

Likewise, in the present case, the exclusion for "your work" in the Essex policies eliminates coverage for property damage caused by faulty work or "poor craftsmanship" in regard to the roofs installed on the OPI buildings.

**D.    *The "Impaired Property" Exclusion.***

The Essex policies contain the following exclusion:

> This insurance does not apply to:
>
> m.  Damage To Impaired Property Or Property Not Physically Injured
>
> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work", or
>
> (2) a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

(Fact 18, pg. 7).

Under the Essex policies, "impaired property" is tangible property that cannot be used or is less useful because it incorporates A&S and Lakin's "product" or "work" that is known or thought to be defective, deficient or inadequate; here, the roofs. Logically, roofing is "incorporated" into OPI's buildings. Thus, under the allegations made by OPI,

its buildings are "impaired property."  Pursuant to this exclusion, any property damage claimed by OPI due to A&S and Lakin's work through the subcontractor Eagle is excluded.

As recognized in Couch on Insurance (3rd ed.) §129:23, this exclusion applies "in essence to preclude coverage for loss of use claims arising from faulty work or products when there is no physical injury to the property."  Here, to the extent OPI asserts any claim for loss of use of the buildings, such damages are excluded under the Essex policies.

**E.**     ***The Combination General Endorsement.***

The Essex policies contain a "Combination General Endorsement" which provides in relevant part: "This insurance does not apply to…claims arising out of breach of contract, whether written or oral, express or implied, implied-in-law, or implied-in fact contract (Fact 23, pp. 12–13). The endorsement is clear.  The Essex policies do not apply to OPI's claims of breach of contract and/or breach of warranty, implied, express or otherwise.

The *Dodson* court recognized that the purpose of CGL coverage is to protect the insured from "tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained." *Dodson*, 812 P.2d at 377, fn. 14. The court held that Oklahoma would follow the "majority view" that the contractual liability exclusion in the St. Paul policy, along with two other exclusions, were clear and unambiguous, and

that the purpose of such exclusions is to eliminate coverage for the "business risks" of the insured. *Id.* at 374–75.

The Oklahoma Supreme Court cited to approximately 40 cases from throughout the United States in support of the "majority view" that CGL policies are not intended to cover the business risks of the insured, i.e., the cost of redoing or repairing faulty work. *Id*. As recognized by the *Dodson* court, as well as the *VBF* court, coverage is eliminated for such claims.

**F.     *The Combination Construction Related Endorsement.***

Essex Policy I which incepted on September 18, 2010, and Essex Policy II which incepted on September 18, 2011 both contain slightly different versions of a "Combination Construction Related Endorsement" which modifies the policy. These endorsements limit liability coverage as follows:

> I. The coverage under this policy does not apply to "bodily injury," "property damage," "personal and advertising injury," or any injury, loss or damage arising out of, caused or contributed by inadequate, improper, faulty or defective construction:
>
> 1. which first occurred, began to occur, or is alleged to have occurred prior to, or is alleged to be in the process of occurring to any degree, as of the inception date of this policy; and/or
>
> 2. causing incremental, continuous or progressive damage arising from an occurrence which first occurred, began to occur or is alleged to have occurred prior to the inception date of this policy.
>
> …

(Fact 20).

> A. The following are added to Section I, item 2, Exclusions:

29

1. The coverage under this policy does not apply to "bodily injury," "property damage," or "personal and advertising injury" or any injury, loss or damage:

   (a) Which first occurred, began to occur, or is alleged to have occurred prior to, or is alleged to be in the process of occurring to any degree, as of the inception date of this policy;

   (b) Which is caused by or alleged to have been caused by incremental, continuous or progressive damage arising from an "occurrence" which first occurred, began to occur, or is alleged to have occurred prior to the inception date of this policy;

(Fact 21).

OPI's allegations against A&S and Lakin clearly and distinctly fall within the scenario anticipated by this endorsement as to the OPI buildings located at 3700 North Classen Boulevard and 3800 North Classen Boulevard. The work performed by A&S and Lakin at the building located at 3700 North Classen Boulevard was substantially completed on August 1, 2010, before the inception of Essex Policy I. (Fact 9). The work performed by A&S and Lakin on the building located at 3800 North Classen Boulevard was substantially completed on August 5, 2010, before the inception of Essex Policy I. (Fact 10).  Further, OPI alleges incremental, continuous and progressive damage due to the work of A&S. (Fact 13). Though, as established in Section II of this brief, the property damage claimed by OPI is not an "occurrence" under the Essex policies, as what is alleged is faulty workmanship or "poor craftsmanship," if any of OPI's claims can be considered to be an "occurrence" under the insuring agreement, any such coverage for the buildings located at 3700 North Classen Boulevard and 3800 North Classen Boulevard is clearly eliminated by the language of this endorsement.

In *Essex Ins. Co. v. Willco Enterprises, LLC*, 2012 WL 3061453 (July 26, 2012), this endorsement was addressed by the United States District Court for the Northern District of Oklahoma.   There, the district court found the endorsement "clearly and unambiguously excludes coverage" for the claims brought due to faulty workmanship in dirt compaction which led to plumbing defects in the property.   The Northern District's reasoning is sound.   The language contained in this endorsement is clear, and OPI's claims, at least as to the buildings located at 3700 North Classen Boulevard and 3800 North Classen Boulevard, are excluded from coverage.

**G.     *Membrane Roofs and Heat Application Roofing Operations Are Excluded Twice.***

The "Combination Constructed Related Endorsement" contained in Essex Policy I further states:

> III. This insurance does not apply to "bodily injury," "property damage," "personal and advertising injury," or any injury, loss or damages, including consequential injury, loss or damage, arising directly or indirectly out of, caused by or contributed to, or resulting from:
> …
> 3.   any operations involving any hot tar, wand, open flame, torch or heated applications of roofing, or membrane roofing; …

(Fact 20).

This endorsement eliminates any and all coverage for OPI's claims against A&S and Lakin for two reasons. First, this endorsement eliminates coverage for any damages arising out of any "operations" involving "membrane roofing." Here, the roofs installed on the OPI buildings were all membrane roofing systems. (Facts 24–29).

31

Second, this endorsement eliminates coverage for any damages arising out of any "operations" involving hot tar, wand, open flame, torch or heated applications of roofing." Here, the membrane roofing systems installed on the OPI buildings required "heated or heat application and/or heat welding in order to install them." (Fact 29).

As well, <u>both</u> Essex policies contain a "Roofing Endorsement" which reads:

> The coverage under this policy does not apply to "bodily injury", "property damage", "personal injury", "advertising injury", or any injury, loss or damage arising out of:
> 3. Any operations involving any hot tar, wand, open flame, torch or heat applications, or membrane roofing…

(Fact 22).

This endorsement, as well, eliminates any and all coverage for damages arising out of "operations" involving either "membrane roofing" or "operations "involving" heat applications." As the roofs which were applied to OPI's buildings are membrane roofing systems, there is no coverage for OPI's claims. (Facts 24–29). Further, in that the membrane roofs required heat application, coverage for OPI's claims is excluded. (Fact 29).

Cases interpreting membrane roofing endorsements and exclusions support the application of such endorsements contained in the Essex policies, in regard to OPI's claims. For instance, in *B Hall Contracting Inc. v. Evanston Insurance Company*, 273 Fed. Appx. 310 (5th Cir. 2008) the Fifth Circuit Court of Appeals, in an unpublished opinion, addressed the roofing membrane exclusion contained in a CGL policy. When B. Hall Contracting, Inc. (Hall) purchased the policy, it requested a "roofing-commercial" classification as one of its classifications. Despite this, the roofing endorsement in the

policy contained an exclusion stating that coverage under the policy "does not apply to 'bodily injury,' 'property damage,' 'personal injury,'…or any injury, loss or damage arising out of:…Any operations involving any hot tar, wand, open flame, torch or heat applications, or membrane roofing." Very definitively, the Fifth Circuit stated: "In short, for our purposes today, the Policy provides roofing coverage, but under the Roofing Endorsement excludes that coverage for 'membrane roofing.'" *Id.* at 311.

Hall was installing a roofing system on a housing structure at the University of Texas Arlington. The membrane roofing was installed using a cold application, thus there was no was heat source such as the "hot tar, wand, open flame, torch or heat applications," which is language contained in the exclusion. While Hall was installing the membrane, sparks from a demolition crew allegedly fell onto the membrane roof and ignited a fire. Hall's insurer, Evanston, declined to assume the defense of Hall in two lawsuits which were filed, and also denied the claims against Hall.

The district court granted summary judgement to Evanston. The basis for the summary judgement was that the roofing endorsement unambiguously eliminated coverage for <u>any</u> operations involving membrane roofing. Membrane roofing was not defined specifically and the district court merely assumed what Hall was installing involved a membrane roof. Hall appealed arguing that "membrane roofing" is actually an industry specific term which should be interpreted pursuant to trade usage and industry meaning, which the district court declined to do.

The Fifth Circuit addressed the appeal de novo. In interpreting the Evanston policy under Texas law, which is very similar to Oklahoma rules of construction, the Fifth

Circuit stated that because the policy did not define "membrane roofing" that term could not properly be interpreted without "some understanding of how it is used in the roofing industry." *Id.* at 313.

Hall argued that for the exclusion to apply, the "membrane roofing" required a heat application. However the Fifth Circuit disagreed. The Fifth Circuit stated that: "The proximity of the words describing roofing operations involving heat applications does not indicate that hot application membrane roofing is the only type of membrane roofing excluded." *Id.* at 313. In vacating and remanding the district court's grant of summary judgment however, the Fifth Circuit stated merely that the court had to consider the trade usage definition of membrane roofing in making its determination of whether the exclusion applied.

The concurring opinion in *Hall* is instructive. The concurring opinion states that a total exclusion of coverage of membrane roofing operations cannot be viewed as overbroad or absurd, especially in view of the accident which occurred. Apparently an expert witness opined that even a cold membrane application uses a flammable adhesive that gives off flammable fumes. The concurring judge wrote: "So Evanston obviously knew what it was doing when it excluded not just any roofing operation, membrane or otherwise, that involved fire or heat applications, but also any and all membrane roofing operation regardless of the method of application." *Id.* at 314. In following the rules of construction of insurance contracts, the concurring opinion stated that it was the clear intent of the parties to exclude coverage for all membrane roofing systems.

Here, there is simply no doubt that the roofs installed on the OPI buildings were membrane roofing systems, and that they were heat applied. (Facts 23–28). Therefore, these endorsements eliminate coverage for OPI's claims.

In *Atlantic Casualty Insurance Company v. Sealtite Roofing & Construction Company,* 73 F. Supp. 3d 953 (N.D. Ill. 2014), the Northern District Court of Illinois addressed a case in which the insurer sought declaratory judgement asserting it had no duty to defend or indemnify its insured, Sealtite Roofing & Construction Company (Sealtite) in an underlying lawsuit seeking damages for the failure of a roof that it had installed. Sealtite, had been hired to replace the roof framing on a building owned by the underlying plaintiff. The roof framing blew off the structure and the property was damaged by snow, rain and other moisture.

Sealtite's Atlantic Casualty Insurance Company (Atlantic Casualty) insurance policy contained an exclusion which stated:

> We do not cover claims, loss, cost or expenses arising out of "bodily injury", "personal injury" or "property damage" as a result of any operations, from initial inspection and pre-installation work to ongoing operations and including completed operations, involving any hot tar, wand, sprayed or sprayed on material, torch or heat applications, hot membrane roofing or any membrane roofing system requiring heat for application.

Atlantic Casualty asserted that this exclusion applied to the underlying plaintiff's claim in that Sealtite installed a hot torch applied membrane roofing system.

Applying Illinois law, the court held that an insurer's duty to defend and indemnify turns primarily on the allegations of the underlying complaint. Further, just

like Oklahoma, when the underlying complaint alleges several theories of recovery, the duty to defend arises even if only one theory falls within the potential coverage of the policy. Thus, if the insurer has a duty to defend, it must defend the insured on all allegations.

Sealtite argued that the complaint did not specifically allege that it had installed the hot torch membrane roofing system. As such, Sealtite, in a motion to dismiss argued that Atlantic Casualty could not proceed with the declaratory judgement in respect to its duty to defend because that duty must be determined by "referenced to the allegations of the underlying complaint, not from extrinsic evidence." *Id.* at 957. However, the court recognized that "an insurer may use evidence extrinsic to the facts alleged in the underlying lawsuit to prove facts that would take the underlying lawsuit completely outside of the potential coverage of the insurance policy." Id at 957.

In Illinois though, the insurer can only rely on extrinsic evidence if it does not tend to determine an issue critical to the determination of the underlying lawsuit. The court stated that, though Sealtite was right in its argument that the insurer could not rely on extrinsic evidence to prove a fact that was crucial to the underlying lawsuit, whether Sealtite was applying a hot torch membrane roofing system was not material to the resolution of the underlying case. Therefore, the insurer could use the extrinsic evidence regarding the application of a hot torch roof membrane system.

The case hinged on the meaning of "operations" in the policy exclusion.  Sealtite argued only those damages caused by the installation process itself were excluded, while

Atlanta Casualty argued for a broader interpretation and application of the exclusion. *Id.* at 960.  The court found the exclusion to be unambiguous and stated:

> Given the breadth of the language in the Roofing Exclusion, then, causal connection follows based on the nature of the roofing system installed, not on how it was installed. If Sealtite installed a type of system described by the exclusion – a membrane roofing system requiring heat for application – any property damage resulting from the provision of that roofing system is excluded from coverage. It remains for Atlantic to prove that the exclusion applies – that is, that Sealtite provided a heat-applied membrane roofing system – but the presence of a fact dispute that bears on application of the exclusion means that the Court must deny Sealtite's motion to dismiss Atlantic's declaratory claim regarding the duty to defend.

*Id.* at 961.

The court stated that Atlantic Casualty's declaratory judgment action as to its duty to defend and indemnify was not premature, but that it had to prove there was no potential for coverage under the policy. Atlantic Casualty could do that by proving Sealtite installed a heat-applied membrane roofing system.

This case is important here in that the court determined the exclusion to be unambiguous and that Atlantic Casualty could prove its case by establishing the applicability of the exclusion, meaning that Sealtite installed a hot-torch membrane roofing system. Further, the occurrence took place after the application of the membrane roof, similar to the claim against A&S. Here, it is clear that membrane roofing systems were installed on the OPI buildings, and required heat application. (Facts 23–28).

In *Encompass Insurance Company v. Gammon Roofing, LLC*, 996 So.2d 16 (La.App.4th Cir. 2008), the Louisiana Court of Appeals, Fourth Circuit held that a roofing

37

exclusion in a CGL policy eliminated coverage for damages caused by the use of a torch while roofing a house. In this case, the roofing exclusion contained in an Essex policy excluded coverage for damages arising out of: "Any operations involving any hot tar, wand, open flame, torch or heat applications, or membrane roofing."[10]  While a roofing company was removing a roof on a house using propane torches, the roof area was ignited which fully engulfed the house.

Encompass Insurance Company (Encompass) provided homeowners coverage for the house which was destroyed, and paid the homeowner $502,860.05 pursuant to his policy. Encompass then attempted to recover that amount from the roofing company, Gammon Roofing, LLC (Gammon Roofing) and its insurer, Essex.

Louisiana law holds that "a summary judgment declaring no coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded." *Id*. at 18. Essex asserted no coverage pursuant to the roofing exclusion.

Gammon Roofing argued the exclusion did not represent the intent of the parties to the insurance contract and violated public policy; that it represented to the homeowner that it was "fully insured," evidencing its belief that the Essex policy covered any and all work performed in its roofing business, including torch work; that the use of a torch in roof repair is necessary and foreseeable and that an insurance policy that fails to cover such ordinary actions is illusory and offers no protections. *Id.* at 19-20. The insured also

---

[10] The exact exclusion is contained in both Essex policies at issue here.

argued that the policy was ambiguous. The court, however, found the policy exclusion to

be unambiguous and that it eliminated coverage for the claim of Encompass under the

Essex policy, stating:

> We find, as did the trial court, that there is no ambiguity in
> the policy and that the Roofing Exclusion precludes recovery
> under the policy. Insurance companies are not required to
> issue CGL policies with unrestricted or "all risk" coverage.

*Id.* at 21. "We thus find, as did the trial court, that the Roofing Exclusion unambiguously

precludes coverage for the damages at issue in this case allegedly caused by the use of a

torch in the roofing of [the homeowners'] home." *Id.*

In *Essex Insurance Company v. Y&J Construction, Inc.*, 2016 WL 8254921 (E.D.

Vir. December 30, 2016), a federal district court addressed an exclusion for damage

which stemmed from the roofing activities of Y&J Construction, Inc. (Y&J) which

involved the use of torches while installing a roof.  Essex sought declaratory judgment

that coverage was excluded, and thus it had no duty to indemnify or defend Y&J, nor any

obligation to the general contractor whose liability insurer had paid the claim. Maryland

law governed the interpretation of the Essex insurance policy.  Maryland law regarding

the interpretation of insurance policies is essentially the same as Oklahoma's.

The court's Finding of Fact 24 stated as follows:

> In this respect, the Policy contains a roofing endorsement that
> excludes from coverage any bodily injury, property damage,
> personal injury, advertising injury, or any injury, loss, or
> damage arising out of "[a]ny operations involving hot tar,
> wand, open flame, torch or heat applications, or membrane
> roofing."

*Id.* at 2.

It was undisputed that Y&J's use of torches caused the fire at issue. In that the facts of the application of the roofing project were undisputed, the court concentrated on (1) whether Y&J had "notice" of the roofing endorsement in the Essex policy, and (2) whether Y&J was entitled reformation of the policy to include coverage for torch work. The court answered each question in the negative.

Because the damage was caused by the use of torches, the policy exclusion precluded coverage for the property damage. *Id.* at *7.   Moreover, reformation of the policy was only available for "mutual mistake, fraud, duress or inequitable conduct." *Id* at *8.  There was no mutual mistake as the insurer knew of the exclusion. *Id.* at *9.  Y&J did not act under duress. *Id.*  There was no fraud or inequitable conduct. *Id.* *9-10.  Thus, Essex was entitled to declaratory judgment of no coverage, nor duty to defend. *Id.* at *10. Likewise, the endorsements contained in the Essex policies here, pertaining to membrane roofs eliminate coverage for OPI's claims in that the roofs placed on the OPI buildings were all membrane roofing systems, and required heat application. (Facts 24–29).

**H.**      ***Coverage, If Any, Is Limited To $50,000.00 for OPI's Claims.***

The roofing work OPI contracted with A&S for was completed by a subcontractor, Eagle. (Fact 7). The "Combination Construction Related Endorsement" contains the following language:

> V.  If subcontractors are used, it is a condition of coverage that "you" require, secure, and maintain certificates of insurance that confirm the subcontractors carry at a minimum Commercial General Liability coverage with limits at least equal to the limits of this policy and name you as an additional insured on their policy.
>
> Failure to comply with this condition does not void your coverage, however, limits of liability hereunder will be reduced and apply as a sublimit of liability, being a

40

Combined Single Limit, $50,000 each occurrence and in the Aggregate, including loss adjustment expenses and defense.  The sublimit would be the most payable for all damages arising out of any one occurrence, and the most payable for all claims under this policy, including investigation and defense.  If the sublimit is tendered or exhausted, we would not defend or continue to defend in any suit.

A&S failed to obtain a "certificate of insurance" from Eagle for such coverage, and thus did not meet this condition of coverage.[11]   By the clear language of this endorsement, if there is coverage for OPI's claims, which Evanston asserts there is not, the limit of liability for all such coverage would be $50,000.00, which also includes the costs of defense of the OPI lawsuit already being paid by Evanston.

## IV.   BECAUSE THERE IS NO POSSIBILITY OF COVERAGE, EVANSTON HAS NO DUTY TO DEFEND AS A MATTER OF LAW

The Essex policies provide that Evanston "will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." (Fact 16). Thus, pursuant to the terms of the policies, Evanston has no duty to defend unless A&S has been sued for covered damages. Under Oklahoma law, an insurer has no duty to defend unless "it ascertains the presence of facts

---

[11] Essex Policy I and Essex Policy II provides for a general aggregate limit of $2,000,000.00; a products-completed operations aggregate limit of $2,000,000.00; a personal and advertising limit of $2,000,000.00 and an each occurrence limit of $2,000,000.00. (Essex I and Essex II Declarations, Exhibits 9 and 10). By contrast, the Max Specialty Insurance Company ("Max Specialty") policy providing coverage for Eagle from June 4, 2010 to August 16, 2010 provided a general aggregate limit of $2,000,000.00; a products/completed operations aggregate limit of $1,000,000.00; an each occurrence limit of $1,000,000.00; and a personal and advertising injury limit of $1,000,000.00. (Max Specialty Declarations, Exhibit 11). Clearly, in that Eagle did not obtain "limits of liability" equal to those contained in Essex Policy I and Policy II, A&S could not have possibly obtained a certificate of insurance as required.

that give rise to the potential of liability under the policy." *First Bank v. Fidelity and Deposit Ins.*, 928 P.2d 298, 303 (Okla. 1996).

For the reasons set forth in this brief, there is clearly no coverage, or potential for coverage, under the Essex policies for the OPI claims. Thus, Evanston has no duty to defend A&S and Lakin in the OPI Lawsuit.

## CONCLUSION

The insuring agreement in the Essex policies extends coverage to sums that A&S and Lakin become "legally obligated to pay as damages." In *VBF*, the Tenth Circuit, applying Oklahoma law, recognized that "legally obligated to pay" means liability arising from tort and not contract. It is undisputed that the liability for which A&S and Lakin have been sued for, is liability arising from contract, and not tort. Furthermore, the Essex policies limit coverage to damages arising from an "accident," and damages arising from the failure to perform in a workmanlike manner, do not constitute damages caused by an "accident." Accordingly, coverage does not extend to the damages OPI seeks to recover from A&S and Lakin under the insuring agreement in the Essex policies.

Alternatively, if this court finds that coverage extends to the OPI claims, coverage for such claims would nevertheless clearly be eliminated by the policy exclusions and endorsements addressed in this brief. There is no coverage under the Evanston policy for OPI's claims, and Evanston is not required to defend A&S and Lakin in the OPI lawsuit. Evanston Insurance Company is entitled to summary judgment.

Respectfully submitted,

**SECREST HILL BUTLER & SECREST**

s/Roger N. Butler, Jr.
ROGER N. BUTLER, JR., OBA #13668
DIANE M. BLACK, OBA #18653
7134 South Yale Ave., Suite 900
Tulsa, OK 74136-6360
(918) 494-5905 Telephone
(918) 494-2847 Facsimile
**ATTORNEYS FOR PLAINTIFF
EVANSTON INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of October, 2018, I electronically transmitted the attached document to the Clerk of this Court using the ECF system for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Mr. Louis P. Falsetti – lfalsetti57@gmail.com
Mr. Ronald A. Schaulat – rschaulat@okclawyer.com
Mr. J. Derrick Teague – dteague@jenningsteague.com
Ms. Linda G. Kaufmann – lkaufman@jenningsteague.com
Mr. Todd A. Murray – tmurray@jenningsteague.com
Mr. David J. Looby – dlooby@dsda.com

s/Roger N. Butler, Jr.

43