**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

EVANSTON INSURANCE )
COMPANY, an Illinois corporation, as )
successor by merger with Essex )
Insurance Company, )
)
      Plaintiff, )
)
v. )    Case No. CIV-17-870-SLP
)
A&S ROOFING, LLC, an )
Oklahoma limited liability company, )
et al., )
)
      Defendants. )

# O R D E R

Before the Court is Plaintiff Evanston Insurance Company's Motion for Summary

Judgment and Brief in Support [Doc. Nos. 44-45]. Defendant A&S Roofing Company has

responded [Doc. No. 56] and Plaintiff has replied [Doc. No. 62].[1] The matter is fully

briefed and ready for decision. For the reasons set forth, the Court grants summary

judgment in favor of Plaintiff.[2]

---

[1] Citations to the parties' submissions reference the Court's ECF pagination.

[2] Defendants Oklahoma Property Investors, LLC; Oklahoma Property Investors II, LLC;
Oklahoma Property Investors III, LLC and Jason P. Lakin (Lakin) have not responded to the
summary judgment motion and, therefore, have failed to dispute the factual record or legal
arguments before the Court. Moreover, Defendant Lakin has not filed an answer or other
responsive pleading in this action. The Court's findings set forth herein are dispositive as to all
Defendants.

## I. Introduction

In this declaratory judgment action, Plaintiff, Evanston Insurance Company (Evanston), contends that two Commercial General Liability (CGL) insurance policies issued to Defendant, A&S Roofing Company (A&S), by Essex Insurance Company (Essex)[3] do not provide coverage for the claims raised in an underlying lawsuit styled *Oklahoma Property Investors, III, LLC v. A&S Roofing, LLC and Jason P. Lakin*, Case No. CJ-2017-4548, District Court of Oklahoma County, State of Oklahoma (the OPI Lawsuit).[4] Alternatively, Evanston argues that multiple exclusions apply that eliminate coverage. Evanston seeks a declaratory judgment that it has no duty to defend or indemnify A&S under the CGL policies.

## II. Standard Governing Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether summary judgment is proper, the court does not weigh the evidence and determine the truth of the matter asserted, but determines only whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

[3] As Evanston explains, "[i]n June 2016, Essex was merged into Evanston, at which time Evanston became the successor by merger with Essex." Pl.'s Br. at 6, n. 1.

[4] Evanston filed a related declaratory judgment action in this judicial district with respect to a CGL policy issued to Eagle Contracting LLC (Eagle), the subcontractor hired by A&S to perform the roofing work at issue in the OPI Lawsuit. *See Evanston Ins. Co. v. Eagle Contracting, LLC, et al.*, Case No. CIV-18-781-SLP (W.D. Okla.). In that action, Evanston similarly seeks a declaration that the CGL policy does not provide coverage for the third-party claim asserted by A&S against Eagle and Vic Maya (the owner of Eagle) in the OPI Lawsuit.

242, 248 (1986); *see also Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015). An issue is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim. *Id.* In evaluating a motion for summary judgment, a district court must consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. *Sylvia v. Wisler*, 875 F.3d 1307, 1328 (10th Cir. 2017).

## III.  Undisputed Facts

Essex issued two CGL policies to A&S. Essex Policy I had a policy period extending coverage from September 16, 2010 to September 16, 2011. Essex Policy II had a policy period extending coverage from September 16, 2011 to September 16, 2012. *See* CGL policies [Doc. Nos. 45-1 and 45-2].

### A.  Applicable Provisions of the CGL Policies

The coverage language of the two CGL policies is virtually identical.[5] Essex agreed to provide coverage for "those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." *See* CGL policies at 19, Section I, Coverages, ¶ 1(a). The insurance applies only to "property damage" that is "caused by an 'occurrence.'" *Id.*, ¶ 1(b). "Property damage" is defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property .

---

[5] For ease of reference, unless indicated otherwise, the Court's citations to the CGL policies are made only to the first CGL policy [Doc. No. 45-1].

. . ." *Id*. at 33, Section V, Definitions, ¶ 17. And, "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id*. at 32, ¶ 13.

## B. Endorsements

As relevant here, the CGL policies contain three endorsements: (1) a Combination General Endorsement; a Combination Construction Related Endorsement; and a Roofing Endorsement. *See* CGL policies at 9-10, 12-13 and 16, respectively. The terms of the endorsements are more fully set forth below.

## C. Exclusions

The CGL policies contain multiple exclusions. Evanston relies on the following exclusions to defeat any coverage under the CGL policies: (1) Exclusion 2.j6 – the faulty workmanship exclusion; (2) Exclusion 2.k – the "your product" exclusion; (3) Exclusion 2.l – the "your work" exclusion; (4) Exclusion 2.m – the "impaired property" exclusion; (5) the Combination General Endorsement exclusion for claims arising out of breach of contract; and (6) the exclusions for operations involving heat applications and membrane roofing set forth in the Combination Construction Related Endorsement and the Roofing Endorsement. The exclusions are addressed more fully below.

## D. A&S Roofing Work

In 2010, A&S entered into a subcontract agreement with Eagle to replace roofs on three buildings owned by either Oklahoma Property Investors, LLC; Oklahoma Property Investors II, LLC or Oklahoma Property Investors III, LLC (collectively, OPI). The

roofing systems installed by Eagle on all three buildings were membrane roofing systems.[6] The roofing installation on the building located at 3700 North Classen Boulevard was substantially completed on August 1, 2010. The roofing installation on the building located at 3800 N. Classen Boulevard was substantially completed on August 5, 2010. Finally, the roofing installation on the building located at 2915 North Classen Boulevard was substantially completed, at the latest, on December 15, 2010.[7]

### E.     The OPI Lawsuit

The OPI Lawsuit filed by OPI against A&S on August 11, 2017, alleges that A&S provided 15-year warranties for the roofing work performed on the three buildings owned by OPI and that A&S "breached each warranty by performing the work in a poor craftsmanship like manner resulting in failures to each of the . . . properties' roofs." Pet.

---

[6] Evanston further claims that all of the membrane roofing systems installed by Eagle on the OPI buildings required some form of heat application, relying on the affidavit of its expert. *See* Pl.'s Br. at 18-19, ¶ 29. Rather than disputing this fact, A&S argues that it is the installation technique actually used that would be material to the summary judgment issues raised and not what the "recommended installation techniques were." *See* A&S's Resp. at 8, ¶ 29. A&S does not, however, include such evidence in its Response. Although not directly addressed by either party, the record includes the affidavit of Victor Maya who is the owner of Eagle. Mr. Maya states that in applying the roofing systems Eagle "used Leister Varimat V-2 to hot air weld the membrane sheets." *See* Maya Aff. [Doc. No. 45-8], ¶ 5(b). Thus, it appears some form of heat application was used during installation.

[7] Evanston argues the substantial completion date of the building located at 2915 North Classen Boulevard was December 5, 2010 and A&S, conversely, argues it was December 15, 2010. The ten-day discrepancy is not material to any issues addressed by the Court.

[Doc. No. 45-3], ¶¶ 2-6.[8]  OPI seeks damages including "damages to its properties, damages to the properties of its tenants and costs of repairs to its properties."  *Id.*, ¶ 10.[9]

The written warranties A&S provided to OPI are virtually identical.  Each warranty states that it "covers any failing portion of the roof due to poor craftsmanship during the installation of this roof" and that the warranty is "a labor warranty which covers any and all labor related issues, if any should arise."  *See* Warranties [Doc. Nos. 45-4, 45-5 and 45-6].

## IV.  <u>Governing Law</u>

Oklahoma law governs the issues presented in this action, where federal subject matter jurisdiction is predicated on diversity of citizenship.  *See, e.g., Universal Underwriters, Ins. Co. v. Winton*, 818 F.3d 1103, 1105-06 (10th Cir. 2016).  Neither party disputes that the CGL policies should be interpreted in accordance with Oklahoma law.

### A.  **Interpretation of Insurance Contracts**

Under Oklahoma law, "[w]hen policy provisions are clear, consistent, and unambiguous, [the court must] look to the plain and ordinary meaning of the policy

---

[8] The OPI Lawsuit also names as a defendant Lakin and alleges that "at all relevant times herein [Lakin] acted as an agent for [A&S] . . . ."  *Id.*, ¶ 11.

[9] Neither party provides any specific facts with respect to when the damage alleged in the OPI Lawsuit occurred or the scope of that damage.  Without evidentiary support, A&S argues "[a]ll damage in the underlying state lawsuit occurred after the inception of the subject policies."  A&S's Resp. at 11.  With respect to the damage to the personal property of OPI's tenants, A&S alleges such damage occurred "at a date subsequent to the substantial completion dates [of the roofing work]."  *Id.* at 12.  Addressing a policy exclusion, Evanston takes the position that "OPI alleges the work was completed on all three buildings by December 15, 2010 . . . [and] the alleged damage occurred *after* the work was completed."  Pl.'s Br. at 30 (emphasis added).

language to determine and give effect to the parties' intent." *Porter v. Okla. Farm Bureau Mut. Ins. Co.*, 330 P.3d 511, 515 (Okla. 2014). "The interpretation of an insurance contract and whether it is ambiguous is a matter of law for the Court to determine and resolve accordingly." *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376 (Okla. 1991). "An insurance contract is ambiguous only if it is susceptible to two constructions on its face from the standpoint of a reasonably prudent layperson, not from that of a lawyer." *Haworth v. Jantzen*, 172 P.3d 193, 196 (Okla. 2006). In determining whether a contract is ambiguous, the court "will not indulge in forced or constrained interpretations to create and then construe ambiguities[.]" *Id.*

The insured has the burden of showing that a covered loss occurred, while the insurer has the burden of showing that a loss falls within an exclusionary clause of the policy. *See Pitman v. Blue Cross & Blue Shield of Okla.*, 217 F.3d 1291, 1298 (10th Cir. 2000) (Once coverage is established, "the insurer has the burden of showing that a loss falls within an exclusionary clause of the policy."); *McGee v. Equicor-Equitable HCA Corp.*, 953 F.2d 1192, 1205 (10th Cir. 1992) ("It is a basic rule of insurance law that the insured carries the burden of showing a covered loss has occurred and the insurer must prove facts that bring a loss within an exclusionary clause of the policy."); *Fehring v. Universal Fid. Life Ins. Co.*, 721 P.2d 796, 799 (Okla. 1986) (insurer bears burden of proving applicability of exclusionary clause). An exclusion is a policy term eliminating coverage where it otherwise would have existed under the general declaration. *Dodson*, 812 P.2d at 377. "[P]olicy exclusions are read seriatim; each exclusion eliminates coverage

and operates independently against the general declaration of insurance coverage and all prior exclusions by specifying other occurrences not covered by the policy . . . In case of doubt, exclusions exempting certain specified risks are construed strictly against the insurer." *Id.* at 377 n. 11.

### B. Duty to Defend / Indemnify

Under Oklahoma law, "[a] liability insurance policy generally contains two basic duties – the duty to defend and the duty to indemnify[.]" *First Bank of Turley v. Fid. & Deposit Ins. Co. of Md.*, 928 P.2d 298, 303 (Okla. 1996). "The insurer's primary duty is to provide indemnity for loss or to pay a specified amount upon determinable contingencies." *Id*. "The duty to defend is separate from, and broader than, the duty to indemnify." *Id*. An insurer has a duty to defend if the facts raise the mere "potential of liability." *Id*. "[O]nce an insurer's duty to defend is triggered, it must defend all claims in a lawsuit" even those that are not covered. *Automax Hyundai South, L.L.C. v. Zurich Am. Ins. Co*., 720 F.3d 798, 806 (10th Cir. 2013) (applying Oklahoma law and noting insurer "offered no authority demonstrating that Oklahoma deviates from this rule and circumscribes the duty to defend if the majority of the conduct alleged in the lawsuit would not be covered under an indemnity provision").[10]

---

[10] The CGL policies state that the insurer "will have no duty to defend the insured against any "suit" seeking damages for . . . "property damage" to which this insurance does not apply." *Id*., at 19, Section I, Coverages, ¶ 1(a).

V.     **Discussion**

A.     **Coverage**

Evanston claims it is entitled to summary judgment because coverage does not exist under the CGL policies.  Evanston makes two arguments in support.  First, Evanston points to the "legally obligated to pay" language of the CGL policies and argues this language makes clear that coverage only extends to tort-based claims.  Evanston contends the OPI Lawsuit does not allege any tort claims, only warranty claims arising from contract.  Second, Evanston contends the alleged "poor craftsmanship" giving rise to the claims in the OPI Lawsuit does not constitute an "occurrence" under the CGL policies.  The Court addresses each of these arguments in turn.

1.     **Legally Obligated to Pay**

First, Evanston argues coverage only extends to property damage for which "the insured becomes legally obligated to pay" because of "property damage" and that the phrase "legally obligated to pay" applies only to claims arising from tort, not claims arising from contract.  According to Evanston, the claims in the OPI Lawsuit made by OPI against A&S arise from breach of warranty and under Oklahoma law, warranty claims flow from contract.  Therefore, Evanston argues the CGL policies do not extend coverage to those claims.  As support, Evanston relies upon *VBF, Inc. v. Chubb Group of Ins. Cos.*, 263 F.3d 1226, 1231 (10th Cir. 2001).

In *VBF, Inc.* the insured, VBF, sought a declaration that coverage existed under a CGL policy for claims brought against it by Foster Wheeler USA Corp. (Foster Wheeler).

VBF manufactured certain electrical equipment and contracted with Foster Wheeler to sell the equipment to Foster Wheeler for a job in China. A subcontractor of VBF, Brand Export Packing of Oklahoma, Inc. (Brand Export), packaged the equipment.

During shipment, the electrical equipment was damaged due to the containers provided by Brand Export. As a result, Foster Wheeler had to replace the damaged equipment. Foster Wheeler filed suit against VBF to recover its costs in replacing the equipment and asserted claims for breach of contract and breach of express and implied warranties. Foster Wheeler later amended its complaint and asserted a claim for negligence against VBF for failing to follow contract specifications.

The CGL policy at issue, like the CGL policies involved in this case, provided that the insurer would "pay damages the insured becomes legally obligated to pay by reason of liability imposed by law . . . ." *Id*. at 1231. Applying Oklahoma law, the Tenth Circuit held that the phrases "legally obligated to pay" and "liability imposed by law" "refer only to tort claims and not contract claims." *Id*. The court found that Foster Wheeler's suit against VBF was based on contract, not tort, as it sought recovery for costs in replacing the defective electrical equipment. *Id*. Additionally, amendment of the complaint to include a claim for "negligently failing to follow contract specifications" did not alter the "underlying nature of the Foster Wheeler suit." *Id*. The court cited, in part, well-established Oklahoma law that "tort products liability suits cannot be brought for damage to the product itself" and that "a consumer is protected from damage to the defective product only by contract law." *Id*. (citation omitted).

Evanston contends that under Oklahoma law, breach of warranty claims arise from contract and, therefore, under the holding of *VBF, Inc.,* no coverage exists. *See* Pl.'s Br. at 21 (citing, *Jaworsky v. Frolich*, 850 P.2d 1052, 1054 (Okla. 1992); *Waggoner v. Town & Country Mobile Homes, Inc*., 808 P.2d 649 (Okla. 1990)).

In response, A&S does not address (and necessarily, therefore, does not dispute) Evanston's contention that a breach of warranty claim arises from contract. Instead, A&S argues that the "underlying nature of the suit" governs rather than any theory of liability alleged and that OPI's claims "arise[]out of inadequate, improper, faulty or defective construction" and are "not limited to damages to the goods (the roofing system) itself." *See* Def.'s Resp. at 19. A&S further relies on the allegation in the OPI Lawsuit pursuant to which OPI seeks "damages to the property of its tenants." *See* Pet., ¶ 10. Thus, A&S argues the substance of the claims "sound in negligence." *Id*. at 18.

The Petition filed in the OPI Lawsuit is rather sparse. It does not expressly allege any specific causes of action. And, as Evanston notes, the word "negligence" is not used in the Petition. Instead, the Petition identifies as the basis for liability the defendants' "breach" of "each warranty." *See* Pet., ¶¶ 5-9.

Under Oklahoma law, "[a] warranty is an express or implied statement of something undertaken as a part of a contract of sale." *Lucas v. Canadian Valley Area Vocational Technical Schl. Of Chickasha, Dist. No. Six*, 824 P.2d 1140, 1141 (Okla. Civ. App. 1992). Nonetheless, "Oklahoma law provides that a tort may arise in the course of performance of a contract and that tort may then be the basis for recovery even though it is the contract

that creates the relationship between the parties." *Woolard v. JLG Indus., Inc*., 210 F.3d 1158, 1168 (10th Cir. 2000) (citing *Hall Jones Oil Corp. v. Claro*, 459 P.2d 858, 861 (Okla. 1969)); *see also Flint Ridge Dev. Co., Inc. v. Benham-Blair & Affiliates, Inc.*, 775 P.2d 797, (Okla. 1989) ("Oklahoma law has long recognized that an action for breach of contract and an action in tort may arise from the same set of facts" and finding instructive the law from other jurisdictions holding that "injury incurred due to negligent construction of a residence may give rise to an action for breach of the implied warrant of workmanlike performance . . . and an action for breach of the contractor's common law duty of care"); *McConnell v. Oklahoma Gas & Elec. Co*., 530 P.2d 127, 129 (Okla. 1974) ("[T]he mere fact that contractual relations were involved does not necessarily mean that plaintiffs are precluded from bringing an action in tort.").

The Court finds the OPI Lawsuit alleges claims that arguably sound in both contract and tort. *Cf. Greystone Constr. Inc. v. Nat'l Fire & Marine Ins. Co*., 661 F.3d 1272, 1284 (10th Cir. 2011) (if there is "some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim") (citation omitted).[11]  Although the word "negligence" does not appear in the Petition, the claims allege a breach of warranty due to the work being performed in "a poor craftsmanship like manner" and seek damages proximately caused by the poor performance of that work, i.e., damage to OPI's properties (other than costs of repair or replacement)

---

[11] In *Greystone*, the court applied Colorado law,  As set forth, Oklahoma law similarly imposes a duty to defend if the facts raise a mere potential for liability.  *See* discussion, supra.

and damage to the property of OPI's tenants. Such proximately-caused damages sound in tort. *See, e.g., United Servs. Auto. Ass'n v. McCants*, 944 P.2d 298, 303 (Okla. 1997); *see also Flint Ridge*, 775 P.2d at 799-801 (recognizing allegations arising from the failure to perform obligations imposed by contract with reasonable care sounded in both contract and tort); *Abercrobmie & Fitch Stores, Inc. v. Penn Square Mall Ltd. P'ship*, 425 P.3d 757, 762 (Okla. Civ. App. 2018) (even though "breach of contract and negligence theories dovetailed with regard to the creation of a duty" the plaintiff was not limited to a breach of contract theory).[12]

Under *VBF, Inc.* and applicable Oklahoma law, no coverage exists for the contract-based claims alleged in the OPI Lawsuit. Therefore, Evanston is entitled to a declaratory judgment that it has no duty to indemnify with respect to the contract-based claims. However, for the reasons set forth, the holding of *VBF* does not preclude coverage for any tort-based claims alleged in the OPI Lawsuit.[13] And, because the OPI Lawsuit includes allegations which raise the potential of liability with respect to the tort-based claims, Evanston is not entitled to a declaratory judgment that the "legally obligated to pay" coverage language of the CGL policies applies to relieve Evanston of its duty to defend.

---

[12] Notably, in its Reply, Evanston fails to address the claim for damage to the property of OPI's tenants and cost of repair to the properties (unrelated to the roof repairs). Instead, Evanston conclusorily states ""[k]eep in mind that negligence is not even asserted in the underlying case." Pl.'s Reply [Doc. No. 62] at 10.

[13] Unlike the damages sought in *VBF, Inc.* which were limited to replacement of the defective product itself, here OPI seeks the recovery of additional damages including damage to the property of third parties.

*See Automax*, supra. For reasons discussed infra, the Court nonetheless concludes the claims alleged in the OPI Lawsuit, including any tort-based claims for damages, are excluded from coverage under the CGL policies and, therefore, Evanston has neither a duty to indemnify or defend.

### 2. Occurrence

Evanston next argues the CGL policies only cover damages arising from an "occurrence," defined as an "accident." Evanston contends OPI's claims against A&S arise from "poor craftsmanship like work" and such "[s]ubstandard work performed by a contractor does not constitute an 'accident' within the meaning [of the CGL policies]." Pl.'s Br. at 23.

Under Oklahoma law, the term "accident" when used in an insurance contract, has no technical legal meaning but instead should be construed "according to common speech and common usage of people generally." *United States Fid. & Guar. Co. v. Briscoe*, 205 Okla. 618, 239 P.2d 754, 756 (1951); *see also Cudd Pressure Control, Inc. v. New Hampshire Ins. Co*., 645 F. App'x 733, 744 (10th Cir. 2016) ("The Oklahoma Supreme Court has held that the term 'accident' has no special meaning in the law, and is defined 'according to common speech and common usage of people generally.'") (quoting *Briscoe*, 239 P.2d at 756). The term "accident" implies that an event was unintentional or was an "unexpected happening." *Briscoe*, 239 P.2d at 756–57. An accident generally occurs when "an unusual and unexpected result" follows the performance of a routine act or an unknown or unexpected cause results in an injury. *Id*. at 757. An accident is "a distinctive event that

takes place by some unexpected happening, the date of which can be fixed with certainty." *Id*. at 621.

The parties cite no Oklahoma case addressing whether damages arising from faulty workmanship fall within the purview of "accident" so as to give rise to coverage.[14] But the Court finds, under the prevailing view, that faulty workmanship does give rise to an occurrence where, as here, the work at issue is not that performed by the insured but by a subcontractor of the insured, the property damage was not caused by purposeful neglect or knowingly poor workmanship and the damage includes damage to the non-defective work product of the contractor and damage to third-party property. *See Greystone*, 661 F.3d at 1284 (applying Colorado law);[15] *see also Essex Ins. Co. v. Sheppard & Sons Constr., Inc.*, No. CIV-12-1022-D, 2015 WL 4132919 at * 4-7 (W.D. Okla. July 9, 2015) (unpublished op.) (applying Oklahoma law to definition of occurrence under CGL policy and distinguishing intentional conduct from negligent conduct arising from alleged faulty

---

[14] In *Dodson v. St. Paul Ins. Co*., 812 P.2d 372, 374 (Okla. 1991), the Oklahoma Supreme Court addressed whether certain CGL policy *exclusions* "precluded recovery for property damage to either the insured's completed work product or to work performed by or on behalf of the insured." The Court did not discuss whether faulty workmanship constitutes an *"occurrence"* so as to trigger coverage.

[15] Evanston cites *Greystone* and points to the court's holding (applying Colorado law) that "injuries flowing from improper or faulty workmanship constitute an occurrence so long as the resulting damage is to nondefective property, and is caused without expectation or foresight." Pl.'s Br. at 23 (citing *Greystone*, 661 F.3d at 1284). Evanston argues "it follows that injuries flowing from improper or faulty workmanship do not constitute an occurrence if the resulting damage is to defective property, such as the roofs installed on the OPI buildings." *Id*. (emphasis added). Evanston fails to elaborate. Nor does Evanston demonstrate either that the roofs themselves constitute defective property or that the property damage at issue resulted from any purposeful neglect or knowingly poor workmanship. The Petition is void of such allegations.

workmanship); *Kentucky Bluegrass Contracting, LLC v. Cincinnati Ins. Co.*, 363 P.3d 1270, 1276 n. 11 (Okla. Civ. App. 2015) (declining to decide issue but noting split of authority and that "our research confirms a general trend from what was the majority view"). The undisputed factual record shows that Eagle, a subcontractor of A&S, installed the roofing. There is no evidence before the Court to show Eagle knowingly performed defective work or that the damages claimed in the OPI Lawsuit are limited to defective property. Accordingly, the Court denies Evanston's summary judgment motion on grounds no occurrence has triggered coverage.

### 3. Combination Construction Related Endorsement / Coverage Limitations

The CGL policies include a Combination Construction Related Endorsement (CCRE) which "amends the liability coverage form or coverage part . . . and applies to the entire policy." *See* CGL policy [Doc. No. 45-1] at 12. The CCRE limits liability coverage as follows:

> I. The coverage under this policy does not apply to . . . 'property damage' . . . or any injury, loss or damage arising out of, caused or contributed by inadequate, improper, faulty or defective construction:
>
> 1. which first occurred, began to occur, or is alleged to have occurred prior to, or is alleged to be in the process or occurring to any degree, as of the inception date of this policy; and/or
>
> 2. causing incremental, continuous or progressive damage arising from an occurrence which first occurred, began to occur or is alleged to have occurred prior to the inception date of this policy . . . .

*Id.*

16

Evanston contends that the CCRE precludes any coverage for damage to the buildings located at 3700 North Classen Boulevard and 3800 North Classen Boulevard. Evanston points to the fact that the work performed by A&S and Eagle on the two buildings was "substantially completed" on August 1, 2010 and August 5, 2010, respectively, before the inception of coverage under Essex Policy I.

A&S does not dispute that that the work on the two buildings identified was substantially completed as of the dates set forth. A&S argues, however, that "*to the extent that the underlying lawsuit seeks damages that arose after the inception of the subject policies, the damages would be* covered." A&S's Resp. at 11 (emphasis added). A&S then relies on the affidavit of its expert, Kelly Parker. A&S contends it is Mr. Parker's "testimony" that "during the inspections he found damages to all of the roofs – damage which was not arising out of, caused or contributed to by inadequate, improper, faulty or defective construction." *Id*. A&S further contends that "[t]he damage Mr. Parker observed would necessarily have occurred at a time later than substantial completion." *Id*. A&S's contention is unsupported by Mr. Parker's affidavit and the affidavit is otherwise wholly conclusory.[16]

Mr. Parker's affidavit states that he is a licensed professional engineer and that he participated in an inspection of the roofs of the three buildings at issue in the OPI Lawsuit. *See* Parker Aff. [Doc. No. 56-1], ¶¶ 3, 4. In contrast to the allegations of the OPI Lawsuit,

---

[16] The Court notes that A&S has not listed Mr. Parker as a witness on its Final Witness List [Doc. No. 53].

Mr. Parker states: "[t]he damage I observed was *not* arising out of, caused or contributed by inadequate, improper, faulty or defective construction." *Id*., ¶ 7 (emphasis added). Conspicuously absent from Mr. Parker's affidavit is any statement as to what *did* cause the damage.

Nonetheless, the Court finds the summary judgment record is insufficient to support a finding in favor of Evanston that any coverage for the buildings located at 3700 North Classen Boulevard and 3800 North Classen Boulevard is precluded by the CCRE. Evanston relies solely upon the date the work was *performed* and/or *substantially completed*. Evanston points to no evidence to show when the *damage* to the property occurred.[17] And A&S is right to argue that when the damage to the property occurred, not when the work was performed, is dispositive.[18]

A&S further relies on the CCRE as grounds for expanding coverage under the CGL policies. According to A&S, "[a] plain reading of this section shows that inadequate, improper, faulty, or defective construction damage is only excluded from coverage when

---

[17] As noted, when addressing a policy exclusion, Evanston takes the position that the alleged damage occurred after the work was completed. Pl.'s Br. at 30.

[18] For this reason, the case Evanston relies upon, *Essex Ins. Co. v. Willco Enters., LLC*, No. 11-CV-247-GKF-TLW, 2012 WL 3061453 at *3 (N. D. Okla. July 26, 2012) (unpublished op.) is distinguishable. In *Willco*, the construction work at issue ceased in approximately September 2007. The property owners began to notice problems related to the construction in 2007 and 2008 – and at the very latest in January or February of 2008. Cambridge, the subcontractor and insured, became aware of the problems, at the very latest, in March 2010 when it was served with a state-court lawsuit. The CGL policy at issue had an inception date of April 10, 2009 and terminated on April 10, 2010. Addressing the identical CCRE, the court found the endorsement unambiguously excluded coverage because at the latest, damage to the property began to occur in January or February 2008. *Id*. at *3. Here, conversely, the record is silent with respect to when damage to the property began to occur. Without such evidence, the Court cannot determine whether the CCRE excludes coverage.

it occurred *prior to* the inception date of the policy; a time limitation only, not a categorical limitation. *See* A&S's Resp. at 10-11. A&S contends: "[i]t logically follows that similar damage arising *after* the inception of the policy is covered." *Id.* at 11.

Although the Court has already determined that certain property damage caused by faulty workmanship, as alleged in the OPI Lawsuit, is a covered occurrence, that coverage is *subject to any exclusions*, discussed below. *See generally Black & Veatch Corp. v. Aspen Ins. (UK) Ltd*, 882 F.3d 952, 958 (10th Cir. 2018) (recognizing that the "basic insuring agreement" defines the initial scope of coverage, subject to exclusions "which narrow the scope of coverage"). The Court agrees with A&S that the CCRE includes a temporal limitation as to any *covered* property damage. But the Court rejects the argument made by A&S that the CCRE operates to expand coverage and otherwise eliminate application of any of the CGL policies' exclusions.

**B.     Exclusions**

Evanston argues the following exclusions apply and defeat any coverage under the CGL policies: (1) Exclusion 2.j6 – the faulty workmanship exclusion; (2) Exclusion 2.k – the "your product" exclusion; (3) Exclusion 2.l – the "your work" exclusion; (4) Exclusion 2.m – the "impaired property" exclusion; (5) the Combination General Endorsement exclusion for claims arising out of breach of contract; and (6) the exclusions for operations involving heated applications of roofing or membrane roofing. Because the Court finds the latter two exclusions preclude coverage, the Court finds it unnecessary to address the other four exclusions argued by Evanston.

### 1. The Combination General Endorsement exclusion for claims arising out of breach of contract

The CGL policies include a Combination General Endorsement (CGE) which provides that "this endorsement changes the policy" and "modifies insurance provided . . . ." *See* CGE [Doc. No. 45-1] at 9; *see also* CGE [Doc. No. 45-2] at 39. With respect to "liability coverage" the CGE states: "[t]his insurance does not apply to claims arising out of breach of contract, whether written or oral, express or implied, implied-in law, or implied-in-fact contract." *Id*.

The Court agrees with Evanston that "[t]his endorsement is clear" and that the CGL policies "do not apply to OPI's claims of breach of contract and/or breach of warranty, implied, express or otherwise." Pl.'s Br. at 33; *see also Dodson*, 812 P.2d at 377 n. 14 (recognizing that coverage under a CGL policy "is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained") (internal quotations marks and citation omitted). A&S fails to address the CGE in any substantive way. The Court finds the CGE precludes coverage for OPI's contract-based breach of warranty claims.[19]

---

[19] The Court makes this finding in the alternative. As set forth, the Court has already determined the CGL policies do not provide coverage for any contract-based claims.

## 2. The CCRE and Roofing Endorsement as to Operations Involving Membrane Roofing

The CCRE provides:

III.    This Insurance does not apply to . . . "property damage", . . . or any injury, loss or damages, including consequential injury, loss or damage, arising directly or indirectly out of, caused by or contributed to, or resulting from:

*       *       *

3.      any operations involving any hot tar, wand, open flame, torch or heated applications of roofing, or membrane roofing, **and/or** your failure to determine weather conditions from local weather bureau or station in advance of any roofing job, and having any open roof to the elements, including but not limited to wind, hail, snow, rain, ice or any combination thereof. . . .

*See* CCRE at 12-13 (emphasis added).[20]

Evanston argues this provision eliminates coverage for any damages arising out of any "operations" involving "membrane roofing." Pl.'s Br. at 36. Evanston points to the undisputed fact that the roofs installed on the OPI buildings were all membrane roofing systems. *Id*.

Second, Evanston argues the endorsement eliminates coverage for any damage arising out of any "operations" involving hot tar, wand, open flame, torch or heated applications of roofing. Evanston points to its expert's opinion that the membrane roofing

---

[20] This language is absent in the CCRE included in Policy Number 3DE2016. *See id*. [Doc. No. 45-2] at 34-35.

system installed on the OPI buildings required "heated or heat application and/or heat welding in order to install them." Pl.'s Resp. at 37 (citation omitted).[21]

In response, A&S argues "[a] plain reading of this section suggests that the policies are meant to limit damage resulting from the elements, such as wind, hail, snow, rain, ice, fire, or any combination thereof, *when the damage occurs on an open roof*." A&S's Resp. at 13. A&S further argues that a plain reading of the CGL policies does not support the interpretation that *all* membrane roofing is excluded from coverage. A&S contends that because the damage claimed in the OPI Lawsuit neither occurred on an open roof when the roofers were using heat to apply the roofs, nor occurred by storm on an open roof, this policy language does not preclude coverage.

Both parties also point to the "Roofing Endorsement" which provides:

The coverage under this policy does not apply to . . . "property damage," . . . or any injury, loss or damage arising out of:

1.  Your failure to take prudent steps in advance of any job or work commencing to determine the weather expected by your local weather bureau for that period of time you will be working on any given day, in order to preclude any open roof during any wind, hail, snow, rain, ice or any combination of these; and

2.  Your having any "open roof" when any weather in 1. above occurs; any "open roof" must be covered in advance of any precipitation and in advance of your leaving the job for any period of time. You must provide appropriate temporary covering, able to withstand normal elements; **and/or**

3.  Any operations involving any hot tar, wand, open flame, torch or heat applications, or membrane roofing.

---

[21] As set forth, the Affidavit of Victor Maya further demonstrates some form of heat application was used during the installation of the membrane roofing.

*See* Roofing Endorsement [Doc. No. 45-1] at 16 (emphasis added).[22]

Evanston contends this endorsement also eliminates coverage for damages arising out of "operations" involving *either* "membrane roofing" *or* heat applications and that both conditions are present here. Conversely, A&S argues the Roofing Endorsement mirrors the CCRE "in that it is concerned with damage that occurs through the elements *when an open roof exists on a job site*." A&S's Resp. at 14. According to A&S, "[t]here is absolutely no reason to include any discussion of 'open roofs' if these endorsements are intended to deny coverage to all membrane roofs." *Id*.

The parties dispute how to interpret the CCRE and Roofing Endorsement given the use of the conjunctive-disjunctive phrase "and/or." Succinctly stated, Evanston urges the Court to find excluded from coverage damages arising from "any operations" involving "membrane roofing" or "heat applications." Conversely, A&S urges the Court to find coverage is excluded only for damages arising from "any operations" involving "membrane roofing" *and* "having an open roof to wind, hail, snow, rain, ice or any combination thereof." A&S further argues the exclusion for heat applications is triggered only if the application was actually used in the roofing operations and no evidence exists in the current record to establish this fact.[23]

---

[22] The language of the Roofing Endorsement is the same in both CGL Policies. *Cf*. Roofing Endorsement [Doc. No. 45-2] at 37.

[23] As noted, the record reflects some form of heat application was used during installation of the roofs. But the Court finds it unnecessary to address this exclusion as the Court finds the endorsements exclude from coverage "any operations" involving "membrane roofing" as urged by Evanston.

The Court finds the unambiguous language of the endorsements supports the construction advocated by Evanston and precludes coverage for "property damage" and any other injury, loss or damage arising out of "any operations" involving "membrane roofing."  A&S's attempt to read the "open roof" language as an additional requirement ignores the plain language of the policy and the conjunctive-disjunctive use of "and/or." *See, e.g., Essex Ins. Co. v.  Cordillera Ranch Prop. Owners Ass'n, Inc*., No. SA-08-CA-605-OG, 2009 WL 10669892 at *12-13 (W.D. Tex. Oct. 15, 2009) (unpublished op.) (addressing proper construction of "and/or" in CGL policy and concluding the unambiguous meaning of the phrase excluded coverage for either or both of the conditions listed) (citing cases); *PETCO Animal Supplies Stores, Inc. v. Ins. Co. of North Am.*, No. CIV-10-682-SRN/JSM, 2012 WL 2681415 at *11 n. 9 (D. Minn. June 4, 2012) (unpublished op.) (construing and/or language or policy as disjunctive "as that is the only reasonable interpretation of the language (citing cases); *see also Continental Ins. Co. v. Atlantic Cas. Ins. Co.,* 603 F.3d 169, 181 (2d Cir. 2010) (roofing endorsement "effectively preclude[d] coverage for 'any operations involving . . . any torch' as well as for 'any operations involving . . . membrane roofing'"); *Essex Ins. Co. v. Fid. & Guar. Ins. Underwriters, Inc*., 282 F. App'x 406, 410 (6th Cir. 2008) (interpreting virtually identical policy and noting that use of "and" to separate first two paragraphs of open-roof exclusion and "and/or" to separate the second and third paragraphs showed the drafters "understood the difference between "and" and "and/or").

Based on the Court's construction, both the CCRE and the Roofing Endorsement preclude coverage for the damages claims in the OPI Lawsuit, including any tort-based claim for damages. Accordingly, Evanston has neither a duty to indemnify nor a duty to defend and Evanston is entitled to summary judgment in its favor.

## C. Reformation

In rather conclusory fashion, A&S makes an argument that the CGL policies should be reformed. *See* A&S's Resp. at 24-25.[24] A&S raised the issue of reformation as an affirmative defense. *See* A&S's Answer to Am. Compl. [Doc. No. 17] at 5, Affirmative Defenses, ¶ 7. The Court, therefore, must decide whether A&S has provided significantly probative evidence regarding this affirmative defense that would support a verdict in its favor. *Jaramillo v. Adams Cty. Sch. Distr. 14*, 680 F.3d 1267, 1268-69 (10th Cir. 2012).

"An action seeking reformation proceeds from the premise that the parties came to an understanding but, when it was reduced to writing, some provision was omitted from the contract or a mistake was inserted through mutual mistake and fraud." *Evans*, 704 F.2d at 1179; *see also Oklahoma Oncology & Hematology P.C. v. U.S. Oncology, Inc.*, 160 P.3d 936, 947 n. 22 (Okla. 2007) (Reformation is a remedy to "conform a written contract to the parties' antecedent agreement" when the written contract "differs from the antecedent expressions on which the parties based their agreement."). "Because of the courts' traditional reluctance to disturb the terms of a written instrument presumably agreed to by

---

[24] A&S cites only one case in support of its argument and otherwise fails to sufficiently develop its argument. *See* A&S's Resp. at 24 (citing *Evans v. Hartford Life Ins. Co.*, 704 F.2d 1177, 1179 (10th Cir. 1983)).

both parties involved, a party seeking reformation under Oklahoma law must show by proof that is clear, unequivocal, and decisive, and more than a mere preponderance, that a prior agreement existed and that the contract does not reflect that agreement because of fraud or mistake." *Evans*, 704 F.2d. at 1179-80 (citations omitted). "The evidence must be sufficient to take the question out of the range of reasonable controversy." *Id*. at 1180 (citations omitted). "Even where a prior agreement is established, the party seeking reformation must also prove that the written instrument differs because of mutual mistake or fraud." *Id. see also Hoar v. Aetna Cas. and Surety Co*., 968 P.2d 1219, 1223 (Okla. 1998) ("When *clear and convincing evidence* is presented Oklahoma permits reformation of a contract, including an insurance contract, to reflect the understanding of the parties *in situations where there is fraud, accident or mutual mistake*.") (emphasis added).

A&S relies on the Affidavit of DeBray Ayala, identified as a "partner in A&S Roofing, LLC." *See* Ayala Aff. [Doc. No. 56-2], ¶ 3. Mr. Ayala states: "[w]hen A&S sought insurance, it requested coverage for all roofing activities it performs." *Id*., ¶ 7. He further states: "A&S Roofing, LLC, performs membrane roofing applications." *Id*., ¶ 8. Mr. Ayala's affidavit shows only that A&S intended to obtain coverage for its membrane roofing applications. It does not show any evidence of fraud, accident or mutual mistake. *See Evans*, 704 F.2d at 1181 (finding party's unilateral understanding did not provide "the mutual agreement and mutual mistake required to support reformation"). Nor has A&S ever asserted any fraudulent conduct by Evanston. Moreover, Mr. Ayala's Affidavit fails to provide any facts demonstrating the existence of any antecedent agreement. The Court

concludes A&S has failed to meet its burden to avoid summary judgment based on its affirmative defense of reformation.

A&S states that "the underwriting file and perhaps portions of the claims file would support its position that Essex knew A&S sought coverage for membrane roofing applications and that it had agreed to provide coverage prior to the claims being made." A&S's Resp. at 24-25. A&S then references the Court's prior denial of its motion to compel production of responses to certain written discovery requests it served on Evanston. *See id.* at 25; *see also* Order [Doc. No. 52].

The Court notes that A&S's motion to compel focused primarily on issues related to alleged ambiguities within the CGL policies. The Court denied A&S's motion to compel, without prejudice, stating that if the Court were to conclude, as a matter of law, that the CGL policies were ambiguous, it would allow A&S the opportunity to re-urge its motion. As set forth, the Court does not find the CGL policies to be ambiguous.

The discovery deadline in this case was January 2, 2019. A&S did not request an extension of that deadline. Nor does the record show A&S conducted any discovery (separate from its written discovery) to address the issue of contract reformation. For instance, A&S did not depose any agent or other corporate representative of Evanston.[25] Nor has A&S complied with the requirements of Rule 56(d) of the Federal Rules of Civil

---

[25] A&S states: "it may even be necessary to depose the underwriter to determine the specific reason(s) for the two exclusions discussed, if the underwriting guidelines are not sufficiently complete." A&S's Resp. at 25. But A&S makes no reference to any allegations of fraud or mutual mistake, or the existence of any antecedent agreement as grounds for deposing any representative of Evanston. As set forth, the existence of such facts is necessary to support a claim of reformation.

Procedure. Under these circumstances, the Court finds the record before the Court does not support grounds for reformation and A&S has not made any showing sufficient to warrant additional discovery as to this issue.

**VI.    Conclusion**

In sum, the Court finds the CGL policies are not ambiguous. Interpreting those policies, the Court finds in Evanston's favor with respect to its coverage argument based on the "legally obligated to pay" language of the CGL policies as to the contract-based claims in the OPI Lawsuit but not as to the tort-based claims. The Court rejects Evanston's coverage argument based on the "occurrence" language of the CGL policies.

The Court further finds the Combination Construction Related Endorsement and the Roofing Endorsement preclude coverage for all claims raised in the OPI Lawsuit.

Evanston, therefore, is entitled to a declaration that it is not obligated to indemnify or defend A&S under the CGL policies in connection with OPI's claims brought against it in the underlying lawsuit, *Oklahoma Property Investors, III, LLC v. A&S Roofing, LLC and Jason P. Lakin*, Case No. CJ-2017-4548, District Court of Oklahoma County, State of Oklahoma.

IT IS THEREFORE ORDERED that Evanston Insurance Company's Motion for Summary Judgment [Doc. Nos. 44-45] is GRANTED.

IT IS SO ORDERED this 22nd day of August, 2019.

_____
SCOTT L. PALK
UNITED STATES DISTRICT JUDGE